IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| IN RE: COMCAST CORP. SET-TOP | : | |
| CABLE TELEVISION BOX | : | MULTIDISTRICT LITIGATION |
| ANTITRUST LITIGATION | : | NO. 09-md-2034 |
| | : | |

November 5, 2015                                                                                          Anita B. Brody, J.

## **MEMORANDUM**

Plaintiffs James Deanne and William Gonzales,[1] and the State of West Virginia (collectively, "Plaintiffs"), on behalf of themselves and the putative class members they seek to represent, have negotiated and agreed to a Third Amended Class Action Settlement Agreement ("Settlement Agreement") with Defendants Comcast Corporation, Comcast Holdings Corporation, Comcast Cable Communications, LLC, and Comcast Cable Communications Holdings, Inc. (collectively, "Comcast") in this multidistrict litigation ("MDL"). On September 11, 2015, Plaintiffs filed a Motion for Certification of a Settlement Class and Preliminary Approval of Class Action Settlement. For the reasons set forth below, I will deny Plaintiffs' motion.

## **I. BACKGROUND**

Comcast is the largest provider of cable multi-channel video programming distribution in the United States, servicing over twenty-four million customers in thirty-nine states and the District of Columbia. Comcast provides cable services in exchange for a monthly fee based

---

[1] Technically, William Gonzales is not a named Plaintiff. In their Memorandum of Law in Support of Plaintiffs' Motion for Certification of a Settlement Class and Preliminary Approval of Class Action Settlement, Plaintiffs "request that this Court appoint an additional named Plaintiff to serve as a class representative," and "seek to add William Gonzales." Pls.' Mem. Supp. Pls.' Mot. at 22, ECF No. 228-1 [hereinafter Pls.' Mem.]. I will not entertain this request because I will deny Plaintiffs' Motion for Certification of a Settlement Class and Preliminary Approval of a Class Action Settlement.

1

upon the level of service provided.  Comcast provides two cable products, Basic Cable and Premium Cable.  Customers who subscribe to Premium Cable pay higher monthly fees than those who subscribe only to Basic Cable.  Customers who subscribe to Premium Cable have access to high-definition channels, On Demand, numerous specialty channels, an interactive programming guide, and the ability to purchase pay-per-view programs and additional channels, like HBO.  Premium Cable customers must rent a cable television set-top box ("Set-Top Box") from Comcast in order to access Premium Cable.  The Set-Top Box enables Premium Cable subscribers to view Premium Cable content and use Premium Cable services.

In 2008, individuals began filing lawsuits against Comcast, alleging that Comcast unlawfully tied the sale of Premium Cable to the rental of a Set-Top Box from Comcast.  On June 17, 2009, the Judicial Panel on Multidistrict Litigation transferred and consolidated these lawsuits before me as a multidistrict litigation, pursuant to 28 U.S.C. § 1407.  *See* MDL Panel Transfer Order, ECF No. 1.  In total, twenty-four civil actions were consolidated into this MDL.[2]

On June 10, 2011, Plaintiffs filed a Third Amended Consolidated Class Action Complaint, alleging that Comcast's unlawful tying arrangement violates Section 1 of the Sherman Act, 15 U.S.C. § 1, the antitrust and consumer protection laws of Washington, and the Business & Professions Code of California.  *See* Third Am. Consolidated Class Action Compl., ECF No. 122.  In a separate complaint, the West Virginia Attorney General alleged that Comcast also violates West Virginia state law.  *See* Class Action Compl., E.D. Pa. Docket No. 09-4671, ECF No. 12-1, Ex. 7.[3]

---

[2] On October 16, 2014, I entered an order approving and adopting the parties' stipulation of dismissal without prejudice of nineteen of the twenty-four civil actions.  *See* Stipulation for Dismissal Order, ECF No. 201.  Another stipulation of dismissal without prejudice of two additional actions is pending.  *See* Stipulation for Dismissal of Certain Pls., ECF No. 229.

[3] Action No. 09-4671 is one of the twenty-four civil actions that were consolidated into this MDL.

On September 11, 2015, Plaintiffs entered into a Settlement Agreement with Comcast. *See* Third Am. Class Action Settlement Agreement, ECF No. 228-4.

## II. PROPOSED CLASS ACTION SETTLEMENT

### A. Proposed Settlement Class

The parties define the Settlement Class as follows:

All persons who:

> (i) resided in and subscribed to Premium Cable in California, Washington, or West Virginia during the Class Period, or
> (ii) subscribed to Premium Cable in any state in the United States during the Class Period and elected to opt out of Comcast's arbitration clause as reflected in Comcast's records;

and paid Comcast a rental fee for a Set-Top Box at any time during the Class Period.

Excluded from the Settlement Class are: (i) those persons who opt out of this Agreement as identified in paragraph 6; (ii) all commercial account customers; (iii) Comcast officers, directors, or employees, any entity in which Comcast has a controlling interest, and the affiliates, legal representatives, attorneys, heirs, or assigns of Comcast; (iv) Class Counsel and Class Counsel's employees; and (v) Judge Anita B. Brody and members of her judicial staff of the United States District Court for the Eastern District of Pennsylvania, as well as any federal, state, or local governmental agency, and any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staffs.

*Id.* § 3.1.

### B. Proposed Settlement

The Class Period covers all Class Members who rented a Set-Top Box anytime starting on or after January 1, 2005 and ending on or before the date of this Court's Order granting preliminary approval of the Settlement Agreement. *Id.* § 2.8. The Settlement is a claims-made

3

settlement.[4] *Id.* § 9.1. Comcast will pay all claims made that in the aggregate do not exceed $15.5 million in value. *Id.* § 9.1.6. If Class Members submit more than $15.5 million worth of claims then benefits will be distributed on a pro rata basis. *Id.* If Class Members submit less than $15.5 million worth of claims then Comcast will retain the balance. *Id.*

The type of relief Class Members receive depends upon whether they are Former Subscribers or Current Subscribers of Comcast, and the length of time they rented a Set-Top Box from Comcast. *Id.* § 9.1. Former Subscribers are "Class Members who were cable television subscribers of Comcast but are no longer subscribers." *Id.* § 2.14. Current Subscribers are "Class Members who are cable television subscribers of Comcast as of the date of the mailing of Notice." *Id.* § 2.11. Former Subscribers, regardless of how many Set-Top Boxes they rented, will receive cash payments as follows:

> 9.1.1.1 If the Claimant rented at least one Set-Top Box from 1 to 35 months (0 to 3 years), the Claimant is entitled to ten U.S. dollars and no cents ($10.00) payable by check.
>
> 9.1.1.2 If the Claimant rented at least one Set-Top Box from 36 to 59 months (3 to 5 years), the Claimant is entitled to twelve U.S. dollars and fifty cents ($12.50) payable by check.
>
> 9.1.1.3 If the Claimant rented at least one Set-Top Box for 60 or more months (more than 5 years), the Claimant is entitled to fifteen U.S. dollars and no cents ($15.00) payable by check.

*Id.* § 9.1.1. Current Subscribers will select to receive either cash payments or in-kind relief for the first Set-Top Box rented, and will receive additional in-kind relief if they rented more than one Set-Top Box as follows:

> 9.1.2.1 If the Claimant rented at least one Set-Top Box from 1 to 35 months (0 to 3 years), the Claimant is entitled to select one of the following options:

---

[4] "A 'claims-made' settlement is a settlement that does not have a fixed settlement fund, but rather provides that the defendant will pay claims of class members who file them, usually up to some fixed ceiling." 4 William B. Rubenstein, *Newberg on Class Actions* § 13:7 (5th ed. 2015).

        (a) ten U.S. dollars and no cents ($10.00) payable by check;

        (b) three (3) free months of Showtime (a maximum estimated $30.00 value); or

        (c) five (5) pay-per-view movie rentals (a maximum estimated $29.95 value).

        Plus, if the Claimant rented more than one Set-Top Box, one (1) additional pay-per-view movie rental (a maximum estimated $5.99 value).

9.1.2.2    If the Claimant rented at least one Set-Top Box from 36 to 59 months (3 to 5 years), the Claimant is entitled to select one of the following options:

        (a) twelve U.S. dollars and fifty cents ($12.50) payable by check;
        (b) three (3) free months of Showtime and one (1) pay-per-view movie rental (a maximum estimated $35.99 value); or

        (c) one (1) free month of Showtime and four (4) pay-per-view movie rentals (a maximum estimated $33.96 value).

        Plus, if the Claimant rented more than one Set-Top Box, two (2) additional pay-per-view movie rentals (a maximum estimated $11.98 value).

9.1.2.3    If the Claimant rented at least one Set-Top Box for 60 or more months (more than 5 years), the Claimant is entitled to select one of the following options:

        (a) fifteen U.S. dollars and no cents ($15.00) payable by check;

        (b) four (4) free months of Showtime (a maximum estimated $40.00 value); or

        (c) seven (7) pay-per-view movie rentals (a maximum estimated $37.97 value).

        Plus, if the Claimant rented more than one Set-Top Box, three (3) additional pay-per-view movie rentals (a maximum estimated $17.97 value).

*Id.* § 9.1.2.

## III. DISCUSSION

Plaintiffs seek certification of a Rule 23(b)(3) settlement class. A request for class certification "demand[s] undiluted, even heightened, attention in the settlement context." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "[T]he party proposing class-action certification bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015). To determine whether the Rule 23 requirements are met for class certification, a district court must conduct a "rigorous analysis." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotation marks omitted).

Ascertainability is a "necessary prerequisite" of a Rule 23(b)(3) class.[5] *Byrd*, 784 F.3d at 162. "The source of, or basis for, the ascertainability requirement as to a Rule 23(b)(3) class is grounded in the nature of the class-action device itself." *Id.* The rigorous analysis required for all Rule 23 requirements applies with equal force to the question of ascertainability. *Id.* at 163. In order to achieve certification of a Rule 23(b)(3) class, a plaintiff must prove by a preponderance of the evidence that the class is ascertainable. *Id.*

"[A]scertainability only requires the plaintiff to show that class members can be identified." *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 n.2 (3d Cir. 2013). "[T]here is no

---

[5] In addition to the ascertainability requirement, a plaintiff must meet the requirements of Rule 23(a) and Rule 23(b)(3). Under Rule 23(a), a plaintiff must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Because the Settlement Class is not ascertainable, I do not examine whether Plaintiffs have met the requirements of Rule 23(a) and Rule 23(b)(3).

6

records requirement." *Byrd*, 784 F.3d at 164. However, "a party cannot merely provide assurances to the district court that it will later meet Rule 23's requirements. Nor may a party 'merely propose a method of ascertaining a class without any evidentiary support that the method will be successful.'" *Id.* (citation omitted) (quoting *Carrera*, 727 F.3d at 306, 307, 311). "[R]eliance on affidavits alone, without any objective records to identify class members or a method to weed out unreliable affidavits, [does] not satisfy the ascertainability requirement." *Id.* at 170.

"The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* at 163 (internal quotation marks omitted). "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry." *Carrera*, 727 F.3d at 307-08 (internal quotation marks omitted). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

The entire Settlement Class satisfies the first part of the ascertainability inquiry because the Settlement Class is defined with reference to objective criteria.[6] Additionally, Current Subscribers satisfy the second part of the ascertainability inquiry because Comcast's own internal records provide a reliable and administratively feasible mechanism for determining

---

[6] A Class Member must meet the following objective criteria: (1) s/he either resides in California, Washington, or West Virginia, or has opted out of Comcast's arbitration clause; (2) s/he subscribed to Premium Cable in the United States; (3) s/he paid Comcast a rental fee for a Set-Top Box at any time during the Class Period; and (4) s/he does not fall into any of the listed objective categories of people that are excluded from the Settlement Class.

whether Current Subscribers fall within the class definition. Thus, Current Subscribers are ascertainable. Comcast, however, lacks records for most Former Subscribers. Pls.' Mem. Supp. Pls.' Mot. at 23-24, ECF No. 228-1 [hereinafter Pls.' Mem.].[7] The critical question is whether a reliable and administratively feasible method exists to determine if Former Subscribers fall within the class definition.

In *Carrera*, The Third Circuit addressed the contested certification of a class of consumers who purchased Bayer's One-A-Day WeightSmart diet supplement in Florida. 727 F.3d at 303. The sole question on appeal was whether the class members were ascertainable. *Id.* The parties agreed that the defendants had no list of purchasers and class members were unlikely to have documentary proof of purchase. *Id.* at 304. To prove ascertainability, the plaintiff sought to rely on two types of evidence: retail records and affidavits of class members attesting to their purchase of the diet supplement. *Id.* at 308. The Third Circuit rejected the use of retail records to prove ascertainability because there was no evidence that a single purchaser could be identified from the records or that the retail records even existed for the relevant period. *Id.* at 308-09.

In addressing the use the affidavits to prove ascertainability, the Third Circuit "cautioned 'against approving a method that would amount to no more than ascertaining by potential class members' say so.'" *Id.* at 304 (quoting *Marcus*, 687 F.3d at 594). The plaintiff provided a method to screen out unreliable affidavits based on the declaration of James Prustman, an

---

[7] In addition to its current statements, Plaintiffs' counsel previously represented to this Court that:

> Plaintiffs' counsel believes that the Third Circuit's rulings are problematic for any settlement involving former Comcast customers, because Comcast represents that it does not maintain identifying data on former subscribers. Without such information, the parties have no way of accurately identifying (and thereby ascertaining) Comcast's former subscribers.

Pls.' Mem. Supp. Pls.' Mot. for Leave to File a Fourth Am. Class Action Compl. at 2, ECF No. 195-1.

individual who worked for nearly twenty-five years at a firm that administered class settlements. *Id.* at 310-11. The declaration discussed techniques to detect and eliminate fraudulent claims. *Id.* at 311. The Third Circuit concluded that the declaration did not demonstrate that the affidavits were reliable:

> Nor does it propose a model for screening claims that is specific to this case. And even if Prutsman produced a model that is specific to this case, we doubt whether it could satisfy the ascertainability requirement. At this stage in the litigation, the district court will not actually see the model in action. Rather, it will just be told how the model will operate with the plaintiff's assurances it will be effective. Such assurances that a party intends or plans to meet the requirements are insufficient to satisfy Rule 23. . . . For example, even if a model screens out a significant number of claims, say 25%, there is probably no way to know if the true number of fraudulent or inaccurate claims was actually 5% or 50%.

*Id.* (internal quotation marks omitted).

The Third Circuit vacated the certification of the class because the plaintiff had not proven that the class members were ascertainable. *Id.* at 311-12. The Third Circuit gave the plaintiff another chance to prove ascertainability because the trial court had certified the class before the Third Circuit's decision in *Marcus*. *Id.* at 311. Accordingly, on remand, the Third Circuit provided the plaintiff with "the opportunity to submit a screening model specific to this case and prove how the model will be reliable and how it would allow [the defendants] to challenge the affidavits." *Id.* However, the Third Circuit advised that "[m]ere assurances that a model can screen out unreliable affidavits will be insufficient." *Id.* at 311-12.

Here, Plaintiffs only provide the following paltry arguments that there is a reliable and administratively feasible mechanism for determining whether Former Subscribers fall within the class definition:

> As to former customers, Comcast has represented that it may have records by which it can verify Class membership back to 2011, depending on location. In the absence of records maintained by Comcast, Class membership may be demonstrated by a customer's account number, cancelled checks, old bills and

9

>invoices, credit card receipts, geographic information coupled with other identifying variables (such as the amount paid for cable service per month), communications to or from Comcast during the relevant period, police reports, insurance claims, and other indicia from which Comcast can determine or challenge a claimant's status as a Former Subscriber. These materials preserve Comcast's due process rights, as it is not foreclosed from challenging these indicia of class membership. [*Byrd*, 784 F.3d] at 171.
>
>With this backdrop, the parties have proposed a Claim Form requiring Settlement Class Members to affirm, under penalty of perjury, that the information provided in the Claim Form is true and correct. Beyond that, Comcast can confirm class membership in two ways:
>   1. Comcast can check its records.
>   2. For Former Subscribers for which Comcast no longer has records, they can submit additional documentation as described above, which Comcast has the right to question.
>
>Either way provides objective proof of class membership.
>
>Unlike *Carrera*, where the plaintiffs relied upon "affidavits alone, without any objective records to identify class members or a method to weed out unreliable affidavits," unreliable affidavits *can* be weeded out if a Settlement Class Member is unable to provide documents showing his or her membership in the class.[8] *Byrd*, 784 F.3d at 170. "This is a far cry from an unverifiable affidavit, or the absence of any methodology that can be used later to ascertain class members." *Id*. The requirement of ascertainability is thus met in this proposed Settlement Class.
>
>---
>
>8    For example, in *Carrera*, the Third Circuit noted that the plaintiff's proposed retail records did not identify a single purchaser of the diet supplement at issue. *Carrera*, 727 F.3d at 308-309. Here, the proposed records which would be used to verify or "weed out" unreliable affidavits *would* show if a claimant subscribed to Comcast cable.

Pls.' Mem. at 25-26. These three paragraphs constitute Plaintiffs' entire verbatim explanation for their pronouncement that Former Subscribers are ascertainable. Not only do Plaintiffs' justifications lack analytical substance, but they also lack any evidentiary support.

Although Comcast has represented that it *may* have records as far back as 2011 for *some* Former Subscribers, Comcast does not have records for any putative Class Members that ceased subscribing to Comcast during the six-year period from 2005 through 2010. To compensate for this absence of Comcast records, Plaintiffs provide a laundry list of other possible types of

10

evidence that Former Subscribers could submit to prove membership in the Settlement Class. Included in the list are police reports and insurance claims. It is implausible, however, that such evidence would ever demonstrate that an individual subscribed to Premium Cable from Comcast and rented a Set-Top Box. Moreover, it is unlikely that much of the other evidence listed such as credit card receipts or cancelled checks would prove both that an individual subscribed to Comcast *and* rented a Set-Top Box.

Plaintiffs contend that, unlike *Carrera*, they are not relying on "'affidavits alone, without any objective records'" to ascertain the Settlement Class. Pls.' Mem. at 26 (quoting *Byrd*, 784 F.3d at 170). Their proposed Claim Form belies this contention. In the proposed Claim Form, Former Subscribers must provide the following sworn statement:

> I declare, under penalty of perjury, that (1) I am a member of the class, (2) I was charged a rental fee for use of one or more Set-Top Box(es) supplied by Comcast during the class period for the amount of time claimed, and (3) the information provided in this Claim Form is true and correct.

Claim Form, ECF No. 230-1. Each Former Subscriber must also "enclose a true and correct copy/copies of one of the following as proof of payment of rental fees":

☐ Cancelled check(s) reflecting payment; or

☐ Credit card or bank statement(s) reflecting payment; or

☐ Invoice from Comcast reflecting rental fee(s) for set-top boxes; or

☐ Other documents that you believe demonstrates your rental of a Set-Top Box from Comcast during the class period; or

☐ If you do not have any records reflecting your payment of the rental fees you paid, please estimate how much you paid for your monthly service.

*Id.* The last method of "proof of payment of rental fees" requires no proof at all. A sworn statement, without any objective records, is the only requirement to establish membership in the Settlement Class.

11

Plaintiffs do not submit any methodology for screening out unreliable sworn statements, and they certainly do not "submit a screening model specific to this case and prove how the model will be reliable." *Id.* at 311. Although Plaintiffs state that Comcast may challenge membership in the Settlement Class, their lack of a screening model leaves them unable to explain how these challenges would actually work. While Plaintiffs list possible types of evidence that Former Subscribers could submit to prove membership in the Settlement Class, none of them are actually required.[8] Plaintiffs rely on sworn statements alone to establish membership in the Settlement Class—the equivalent of relying on "affidavits alone," a method of ascertainability that the Third Circuit explicitly rejected in *Carrera*.

## IV.  CONCLUSION

The Settlement Class is not ascertainable because Plaintiffs do not have a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. Therefore, I will not certify the Settlement Class.[9] I also will not preliminarily approve the Settlement Agreement due to the absence of a certifiable class.

---

[8] Even if Plaintiffs required one of these types of evidence, Plaintiffs likely would not meet the ascertainability requirement because several of these types of evidence do not prove both that an individual subscribed to Comcast *and* rented a Set-Top Box. Thus, this evidence would be insufficient to establish that Former Subscribers fall within the class definition.

[9] Third Circuit precedent dictates that I deny certification on the basis that the Settlement Class is not ascertainable. Judge Rendell's concurring opinion in *Byrd* provides a contrary view:

> The irony of this result is that it thwarts "[t]he policy at the very core of the class action mechanism," i.e., "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997)). . . . We have effectively thwarted small-value consumer class actions by defining ascertainability in such a way that consumer classes will necessarily fail to satisfy for lack of adequate substantiation. . . . The policy rationales that we cite in support of our expanded ascertainability requirement are relatively weak when compared to the significant policy justifications that motivate the class action mechanism.

784 F.3d at 174-75 (Rendell, J., concurring).

Accordingly, I will deny Plaintiffs' Motion for Certification of a Settlement Class and Preliminary Approval of Class Action Settlement.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:   Copies **MAILED** on _____ to: