# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: COMCAST CORP. SET-TOP CABLE TELEVISION BOX ANTITRUST LITIGATION | CIVIL ACTION NO. 2:09-md-02034-AB |
| _____ ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS AND
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................. i

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ........................................................................................ 1

BACKGROUND .......................................................................................... 3

   I.     The Comcast Antitrust Litigation................................................. 3

     A.   Brief summary of the allegations ....................................... 3

       1. Individuals representing those who Plaintiffs argue would not be subject to Comcast's Arbitration Clause ...................................... 4

       2. West Virginia Action............................................... 5

   II.    Summary of the Class Action Settlement.................................... 5

     A.   The risk of individual arbitration........................................ 7

     B.   The risk of dismissal............................................................ 8

     C.   The risk that the Court would certify only regional subclasses or refuse to certify the case to proceed forward as a class action......................................... 9

     D.   In these circumstances, the Settlement confers substantial benefits to the class members .................................................. 10

ARGUMENT .............................................................................................. 12

   I.    This case satisfies the requirements for certification of a settlement class ...... 12

     A.   The Elements of Rule 23(a) are satisfied ....................... 14

       1. Numerosity is present...................................... 14

       2. There are questions of law and fact common to all class members ................ 15

       3. Plaintiffs' claims are typical of the claims of all class members .................... 16

       4. Plaintiffs and proposed Co-Lead Class Counsel have adequately represented the interests of the Settlement Class................ 17

        a. Counsel have ample experience in this kind of litigation and have, and will continue to, ably represent both Plaintiffs and the entire Class................ 17

b.  The proposed Class Representatives' interests are aligned with those of the Class .................................................................................................... 19

5. The Settlement Class Members are ascertainable ............................................. 20

a.  The Settlement Class is identifiable based upon objective criteria.............. 22

b.  The Settlement Class can be verified by an administratively-feasible mechanism using objective evidence ......................................................... 23

B.  The requirements of Rule 23(b)(3) are likewise met in this settlement context .................................................................................................................... 24

1. The questions of law and fact that are common to the Class predominate over individual issues .............................................................................................. 25

2. Class treatment of this matter is the best method to achieve judicial efficiency and ensure that all Plaintiffs have the opportunity to assert their claims ......... 28

C.  Proposed Co-Lead Class Counsel meet the requirements for appointment under Rule 23(g) ............................................................................................................ 29

II.  Preliminary approval of the Settlement is appropriate ..................................... 30

A.  The Proposed Settlement and Plan of Distribution satisfy a preliminary evaluation of reasonableness ................................................................................ 31

B.  The Settlement is the result of arm's-length negotiations ................................. 32

C.  The Settlement in this case was reached after the provision of sufficient information, through discovery or discussion with Comcast ........................... 33

D.  The Parties are experienced in similar litigation ............................................. 34

III.  The proposed form and manner of notice and schedule are reasonable ........... 35

A.  Plaintiffs propose providing direct and publication notice .............................. 36

B.  The proposed Notice Plan assures that Class Members will receive adequate notice of the Settlement ....................................................................................... 37

C.  It would be appropriate to approve the Claim Form and Plan of Distribution and authorize the Class Administrator to disseminate notice of the Settlement and receive and process Class Member claims ............................................... 38

D.  The proposed schedule is reasonable ............................................................. 38

CONCLUSION .................................................................................................................. 40

## TABLE OF AUTHORITIES

**CASES**

*Alwert v. Cox Communs., Inc. (In re Cox Enters., Inc. Set-Top Cable TV Box Antitrust Litig.)*, 835 F.3d 1195 (10th Cir. 2016) ................................................................ 10

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) ................................ 12, 25, 28

*American Express Co. v. Italian Colors Restaurant,* 133 S. Ct. 2304 (2013) ............................... 6

*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ......................................... 6

*Baby Neal for & by Kanter v. Casey,* 43 F.3d 48 (3d Cir. 1994) ................................ 15

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494 (3d Cir. 1998) ....................... 26

*Byrd v. Aaron's, Inc.*, 784 F.3d 154 (3d Cir. 2015) .................................... 20, 21, 23, 24

*Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013) ....................................... 21, 22

*Chakejian v. Equifax Info. Servs.*, 275 F.R.D. 201 (E.D. Pa. 2011) ............................ 14

*Chiang v. Veneman*, 385 F.3d 256 (3d Cir. 2004) ........................................... 22

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ............................... 32

*Curiale v. Lenox Group, Inc.*, Civ. A. 07-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) ............................................................ 30, 31

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) ....................... 17, 19, 20

*Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) ......................... 37

*Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007) ............................... 5

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ................................. 30

*Fisher Bros. v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ..................... 34

*Gates v. Rohm & Haas Co.*, 248 F.R.D. 434 (E.D. Pa. 2008) ........................... 30, 31, 33, 34

*Gelder v. CoxCom, Inc.*, 696 F.3d 966 (10th Cir. 2012) ................................... 10

*Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975) ............................................ 31

*Gray v. Marshall Cnty. Bd. Of Educ.*, 179 W.Va. 282 (1988) ............................... 27

*Hanrahan v. Britt*, 174 F.R.D. 356 (E.D. Pa. 1997) ....................................... 32

*Hassine v. Jeffes*, 846 F.2d 169 (3d Cir. 1988) .......................................................... 17

*Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013) .................................... 23

*Healy v. Cox Communs., Inc. (In re Cox Enters.)*, 871 F.3d 1093 (10th Cir. 2017) .................. 10

*Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912 (3d Cir.1992) ...................... 5

*In re American Express Merchants' Litig.*, 634 F.3d 187 (2d Cir. 2011) ...................... 6

*In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ...................................................... 30

*In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) ...................................................... 32

In re *CIGNA Corp. Sec. Litig.*, 2007 WL 2071898 (E.D. Pa. July 13, 2007) .............. 32

*In re Cmty. Bank of N. Va.*, 622 F.3d 275 (3d Cir. 2010) ...................................... 13, 17

*In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.,* 656 F. App'x 8 (3d Cir. 2016) ...... 22

*In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484 (E.D. Pa. 2003) ...................... 35

*In re Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litig.*, 09-ML-2048-C, 2011 WL 6826813 (W.D. Okla. Dec. 28, 2011) ...................... 9

*In re Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litig.*, 09-ML-2048-C, Slip. Op. (W.D. Okla. Mar. 28, 2012) ...................... 10

*In re Flonase Antitrust Litig.*, 284 F.R.D. 207 (E.D. Pa. 2012) ...................... 14

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008) .............. 12, 22, 25

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009) ...................... 30, 31

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003) .............. 31, 32

*In re Natural Gas Antitrust Cases I – IV*, Case Nos. 4221, 4224, 4226 and 4228 (Ca. Sup. Ct.) 38

*In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010) ...................... 12

*In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249 (E.D. Pa. 2012) .................... *passim*

*In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2016 U.S. Dist. LEXIS 85853 (E.D. Pa. June 30, 2016) ...................... 16

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450 (D.N.J. 1997) ........... 36

*In re Prudential Ins. Co.,* 148 F.3d 283 (3d Cir.1998) ................................................ 12, 28, 30, 36

*In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840 (D. Md. 2013) ................................. 7

*In re Warfarin Antitrust Litig.,* 391 F.3d 516 (3d Cir. 2004) ................................................. 29, 30

*In re Western States Wholesale Natural Gas Antitrust Litig.*, Case No. 2:03-cv-1431 (D. Nev.) 38

*Jerry Enters. of Gloucester County, Inc. v. Allied Beverage Group, L.L.C.*, 178 F.R.D. 437
    (D.N.J. 1998) ............................................................................................................... 16

*Kessel v. Monongalia Cnty. Gen. Hosp. Co.*, 220 W.Va. 602 (2007) ........................................... 27

*Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88 (D.D.C. 2013) ........................................ 37

*Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342 (Cal. App. 2d Dist. 2012) ...................... 26

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 (E.D. Pa. 1994) ................................................. 34

*Larson v. AT & T Mobility LLC*, 687 F.3d 109 (3d Cir. 2012) ...................................................... 21

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) .............................................. 21, 22

*Marsden v. Select Med. Corp.*, 246 F.R.D. 480 (E.D. Pa. 2007) ................................................. 14

*Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467 (E.D. Pa. 2007) ........................................... 30

*N. Pac. Ry. Co. v. U.S.*, 356 U.S. 1 (1958) ................................................................................. 26

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154 (3d Cir. 2001) .......... 16, 28

*Nichols v. SmithKline Beecham Corp.*, Civ. A. 00-6222, 2005 WL 950616 (E.D. Pa.
    Apr. 22, 2005) ............................................................................................................... 36

*Pollock v. Energy Corp. of Am.*, No. 10-1553, 2013 U.S. Dist. LEXIS 141139 (W.D. Pa.
    Sept. 16, 2013) .......................................................................................................... 21, 23

*Ridgeview Properties v. Starbuck*, 96 Wash. 2d 716 (Wash. 1982) ............................................ 27

*Samuel v. Equicredit Corp.*, No. Civ. A. 00-6196, 2002 WL 970396 (E.D. Pa. May 6, 2002) ... 31

*State v. Black,* 100 Wash. 2d 793 (Wash. 1984) ......................................................................... 26

*Stewart v. Abraham*, 275 F.3d 220 (3d. Cir. 2001) .................................................................... 14

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ................................. 12, 22, 25, 32

*Thomas v. NCO Fin. Sys., Inc.*, Civ. A. 00-5118, 2002 WL 1773035 (E.D. Pa.
    July 31, 2002) .......................................................................................................... 30, 34, 35

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) ......................................... 37

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................................... 12, 15

*Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956 (3d Cir. 1983) ............................................... 30

### STATUTES AND RULES

15 U.S.C. § 1 ................................................................................................................. 1, 4

15 U.S.C. § 15 ..................................................................................................................... 8

28 U.S.C. § 1407 ................................................................................................................. 2

Fed. R. Civ. P. 23 ................................................................................................... *passim*

Section 17200 of the California Business & Professions Code ..................................... 5

W.Va. Code 47-18-16 (1978) ......................................................................................... 27

Wash. Rev. Code § 19.86.010 .......................................................................................... 5

Wash. Rev. Code Ann. § 19.86 ......................................................................................... 5

### OTHER SOURCES

4 *Newberg on Class Actions* § 18.25 (3d ed. 1992) ...................................................... 16

5 James W. Moore et al., *Moore's Federal Practice* (3d ed. 2013) ............................... 21

Herbert Hovenkamp, Tying Arrangements and Class Actions, 36 Vand. L. Rev. 213 (1983) ...... 8

Manual for Complex Litigation, Fourth (2013) ....................................... 21, 23, 30, 35

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97
    (2009) ..................................................................................................................... 15

## INTRODUCTION

Plaintiffs James Deanne, William Gonzales, John Martich and Carrie D. Cooper, individually and as representatives of others similarly situated (collectively, "Plaintiffs"), submit this memorandum, on behalf of themselves and the putative class members they seek to represent, in support of class certification and preliminary approval of the settlement reached with Defendants Comcast Corporation, Comcast Holdings Corporation, Comcast Cable Communications, Inc., Comcast Cable Communications, LLC, and Comcast Cable Communications Holdings, Inc. (collectively, "Comcast").

This antitrust class action lawsuit alleges that Comcast unlawfully tied the sale of Premium Cable (as defined below) to the rental of a cable television set-top box from Comcast in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and certain state laws. A set-top box is a device that connects to, and is effectively an extension of, a television set. Plaintiffs allege that Comcast required them and members of the putative class to rent Comcast's set-top box to receive all of the benefits of the Premium Cable services to which they subscribed. This case further alleges that, through this tying arrangement, Comcast substantially restricted competition in the market for the sale or rental of set-top boxes, enabling Comcast to reap supra-competitive profits from Plaintiffs and members of the putative class and producing significant adverse effects on interstate commerce.

In addition to the federal antitrust claim, certain Plaintiffs assert that Comcast has engaged in unfair competition under the laws of California and violated the antitrust and consumer protection laws of Washington.[1] The West Virginia Attorney General initially asserted claims against Comcast, in a separate complaint, under West Virginia state law. A West

---

[1]  Unless otherwise noted, all references to "Washington" herein are intended to refer to the State of Washington, not Washington, District of Columbia.

Virginia resident has now brought class claims under that State's Consumer Credit and Protection Act and is the named plaintiff for West Virginia class members in the Fourth Amended Consolidated Class Action Complaint.

This multidistrict litigation ("MDL") was transferred to this Court pursuant to 28 U.S.C. § 1407 by the Judicial Panel on Multi-District Litigation ("JPML") in June 2009. Now, nearly nine years later, and after extensive, arm's-length settlement negotiations, with guidance from this Court and the Third Circuit, Plaintiffs have reached a proposed settlement with Comcast.

The Fourth Amended Class Action Settlement Agreement ("Settlement Agreement") (Exhibit 1 hereto) is intended to resolve all claims concerning the tying of the sale of Comcast Premium Cable services to the rental of a Comcast set-top box during the period 2005 through the Court's order granting preliminary approval of the Settlement (the "Class Period"). The settlement provides a recovery for Plaintiffs and the putative Settlement Class consisting of:

- Cash and in-kind credits to Settlement Class Members, up to a collective value of $15,500,000,[2] up to a maximum per customer of:

  - $10.00 in cash or credits for various Comcast services worth up to $30.00 for customers who rented a Set-Top Box for 1 to 35 months during the Class Period;

  - $12.50 in cash or credits for various Comcast services worth up to $35.99 in value for customers who rented a Set-Top Box for 36 to 59 months during the Class Period;

  - $15.00 in cash or credits for various Comcast services worth up to $41.98 in value for customers who rented a Set-Top Box for more than 60 months during the Class Period.

As discussed more fully below, in light of the considerable challenges and substantial expense of continued litigation, the settlement posed herein is as good a result for the Class as possible. Accordingly, Plaintiffs respectfully request that the Court certify a settlement class,

---

[2] Comcast will make cash payments directly to eligible class members and will provide the Court with an accounting of those payments.

grant preliminary approval of the proposed Settlement and Plan of Distribution, approve the Forms of and Plan for Dissemination of Notice to the Class, approve the Claim Form, set a schedule for objections and a Final Fairness Hearing, and appoint Class Representative Plaintiffs and Co-Lead Class Counsel.  A proposed order is submitted herewith.

**BACKGROUND**

**I.    The Comcast Antitrust Litigation**

**A.    Brief summary of the allegations**

Comcast is the largest provider of cable multi-channel video programming distribution ("MVPD") in the United States.  Comcast faces minimal competition, if any, where it provides cable services and thus has substantial economic power where it operates.  Comcast's Premium Cable services include, *inter alia*:

- "On Demand" services that allow subscribers to watch certain programs at the time of their choosing and to pause, fast-forward, and rewind those programs;

- pay-per-view programming, which allows subscribers to purchase unique programs not otherwise available, including a variety of live entertainment;

- numerous specialty channels, such as news and sports channels;

- various channels that subscribers can pay to receive, like Showtime and Starz;

- high-definition channels, which enhance the image quality beyond that offered on standard channels; and

- an interactive programming guide, which provides a simple means of navigating through the many options of cable programming available to customers, allowing them to select a desired program.

Plaintiffs allege that Comcast abuses its economic power by tying the purchase of Premium Cable to the rental, for a monthly fee, of a separate product from Comcast, the set-top box, which is sometimes called a digital receiver or digital converter.  The set-top box attaches to a television and is the only device that enables consumers to access all Premium Cable services.

Each television that a customer has requires a separate set-top box for which Comcast charges a monthly rental fee that in the aggregate potentially exceeds the value of the box.

Plaintiffs allege that Comcast tells customers that they must rent a Comcast set-top box to enjoy all of the benefits of Premium Cable.  It is undisputed that Comcast does not permit customers to buy Comcast's set-top boxes and makes it difficult for customers to determine how to obtain a third-party set top box that would be compatible with Comcast's system.

Comcast's Premium Cable customers cannot use set-top boxes obtained from sources other than Comcast to access the full panoply of Comcast's Premium Cable.  Boxes legally obtained from sources other than Comcast could be made to work on Comcast's cable network, with Comcast's cooperation, but that has not occurred.  At a minimum, set-top boxes other than those provided by Comcast cannot access Comcast's interactive services.

While all of the named Plaintiffs challenge the same conduct of Comcast, there are variations among certain Plaintiffs, largely revolving around (1) whether they may be subject to the arbitration clause contained in Comcast's Subscriber Agreement, which Comcast asserts would require that their claims go to individual, non-class arbitration, and (2) their assertion of state law claims in addition to or in lieu of the federal antitrust claim.

    1.    <u>Individuals representing those who Plaintiffs argue would not be subject to Comcast's Arbitration Clause</u>

The Fourth Amended Consolidated Class Action Complaint asserts a federal antitrust tying claim, under Section 1 of the Sherman Act, 15 U.S.C. § 1, on behalf of purchasers of Comcast's Premium Cable packages residing in California, Washington or West Virginia, or who opted out of Comcast's arbitration clause.  Comcast's customer agreements contain a mandatory, binding arbitration clause with a class action waiver, but Comcast allowed its Premium Cable subscribers to "opt out" of arbitration by either notifying Comcast via U.S. Mail

of their intention to opt out or by completing a form on-line.

Comcast has not moved to compel arbitration of the claims brought on behalf of class members in California.  The California Plaintiffs assert, in addition to a Sherman Act tying claim, claims for unfair competition under California's Business & Professions Code § 17200, *et seq.*

Although Comcast has moved to compel arbitration of the Washington state law claims, Plaintiffs believe that it has waived its right to compel arbitration, as the Washington state law claims were excepted from its previous motions to compel.  *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 222 (3d Cir. 2007) (quoting *Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912, 926-27 (3d Cir. 1992)).  In addition to a Sherman Act tying claim, the Washington Plaintiffs also assert claims under Washington's antitrust statute, Wash. Rev. Code § 19.86.010, and the Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86.

> 2.     West Virginia Action

A separately-captioned case, originally filed as *West Virginia ex. rel. McGraw v. Comcast Corp.*, No. 09-cv-00091 (N.D. W.Va.) ("*McGraw*"), was brought by counsel deputized as Special Assistants to the Attorney General of West Virginia.  The *McGraw* case does not assert any federal claims; it asserts only West Virginia state law claims under West Virginia's Antitrust Act, Consumer Credit and Protection Act, and common law.  The West Virginia class is now represented by Plaintiff John Martich.  Comcast has not moved to compel arbitration of those class claims.

## II.    Summary of the Class Action Settlement

Plaintiffs' counsel and counsel for Comcast have been engaged in extensive arm's-length settlement negotiations for a substantial period of time, beginning with discussions that preceded the December 21, 2011, settlement conference with the Court.  That Court conference followed

oral argument on Comcast's Motion to Compel Arbitration, during which the Court made clear that serious consideration would need to be given to the arbitration issue, particularly in light of then recent Supreme Court and other federal appellate court jurisprudence—*i.e.*, *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), and *In re American Express Merchants' Litig.*, 634 F.3d 187 (2d Cir. 2011) ("*AmEx II*"). The Court made clear that neither side could count on victory as a foregone conclusion and encouraged the parties to further explore the possibility of settlement.

On January 23, 2012, the parties participated in the first of what would be five formal mediation sessions before Thomas Rutter, Esquire, of ADR Options in Philadelphia.[3] Before, during, and since those formal mediation sessions, counsel for the parties also exchanged many communications concerning settlement—by telephone, letter, in-person discussions, and e-mail. Throughout these negotiations, the parties had regular contact with the Court about their progress, both by teleconference and during in-chambers meetings.

In 2013, the Supreme Court issued its opinion in *American Express Co. v. Italian Colors Restaurant,* 133 S. Ct. 2304 (2013) ("*AmEx III*"), which rejected the Plaintiffs' argument in this case that Comcast's arbitration clause was manifestly unfair because it would be difficult—if not impossible—for a layperson to bring Sherman Act tying claims in an individual arbitration. Comcast then filed a renewed motion to compel arbitration of Plaintiffs' Sherman Act claims, as well as the Washington state law claims on November 12, 2014. The Parties have continued to engage in settlement negotiations and have received guidance from the Court on issues which could affect the Parties' proposed settlement agreements.

---

[3]  The other formal negotiation sessions occurred on May 4, June 25, July 9, and September 20, 2012.

Throughout the course of these settlement negotiations, Plaintiffs have had the opportunity to explore many of the issues that they otherwise would have pursued in formal discovery, allowing Plaintiffs to better assess the issues and the strengths of the allegations in the case, as well as the risks that continued litigation would present. These risks, many of which could end this litigation for Plaintiffs altogether, resulting in no recovery, include, among others:

## A.      The risk of individual arbitration

There is a great risk that Settlement Class Members' claims would need to be resolved in individual arbitration. Indeed, Plaintiffs would have difficulty in not only opposing any new motion to compel arbitration that Comcast may file, but also seeking class certification. *See In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 861-62 (D. Md. 2013) (finding that "members of the current class that are subject to arbitration, forum selection, or class action or jury waiver clauses are in a different legal position than those class members whose contracts contain no such provisions," and holding that the "class as currently defined does not meet Rule 23's requirements of commonality, typicality, and predominance."). Comcast would invariably make the same argument for those individuals who decided to opt out of Comcast's arbitration clause, but then decided to resubscribe at a later date and did not again opt out.

Plaintiffs would argue, as they have, that this Court should not compel arbitration of the Washington and California claims and the Sherman Act claims of the opt-out Plaintiffs. But, there is still a very real risk that some of those class members' claims would be subject to individual arbitration. As discussed at length in Plaintiffs' earlier briefing on this issue (*see* Dkt. Nos. 128, 133), which Plaintiffs incorporate by reference, individual arbitration is not a viable option for redressing low-dollar-value Sherman Act or state law claims. A Section 1 tying claim is a complex claim, which realistically requires economic expert analysis and representation by counsel. In this regard, Plaintiffs incorporate by reference the affidavit of economist Hal J.

Singer, Ph.D., which was submitted in response to Comcast's Motion to Compel Arbitration (Dkt. No. 128). The costs of the necessary economic expert alone would dwarf the individual recovery, and those expert costs would not be recoverable even if a claimant prevailed. For just this reason, no rational consumer or attorney would bring such an individual arbitration.

In addition, because the potential recovery would be so small, no sensible attorney could take the case on a contingency basis, and because the attorney time required would be so substantial, no realistic client would—or, with few exceptions, *could*—pay an attorney on an hourly basis. While the Clayton Act provides for the recovery of a "reasonable attorney's fee" if the plaintiff prevails, 15 U.S.C. § 15, the amount of such a fee request would be so disproportionate to the client's recovery, even if the latter were trebled, as to give any attorney doubt about such a request being granted. Absent representation by counsel, it is simply unrealistic to suggest that a layperson could be expected to pursue an antitrust tying claim *pro se* against Comcast and its attorneys.

Ordering the claims for California, Washington, and opt-out class members in this case to individual arbitration would thus, as a real, practical matter, be the death knell for the claims. They would never be heard. Regardless of their merit, the cases would simply and effectively be silenced. This significant risk has not been lost on Plaintiffs.

**B.    The risk of dismissal**

Plaintiffs also face the risk of dismissal, whether on a motion to dismiss or a motion for summary judgment. Tying cases have been recognized to be among the most challenging of all antitrust cases. *See* Herbert Hovenkamp, *Tying Arrangements and Class Actions*, 36 Vand. L. Rev. 213 (1983) ("Few areas of federal antitrust law are more confusing than the law that governs tying arrangements."). The legal hurdles that Plaintiffs would have to surmount to avoid dismissal are thus higher in this kind of case than in other antitrust cases—themselves typically

complex—and certainly higher than in cases involving simpler legal theories.[4]  Moreover, while

Plaintiffs would need to overcome each such hurdle, Comcast, by contrast, would need only to

succeed in challenging one of them to bring down Plaintiffs' case.  The risks are therefore

substantial that even if Plaintiffs' claims were to survive Comcast's attempt to force arbitration,

they might nonetheless subsequently be dismissed.

> **C.    The risk that the Court would certify only regional subclasses or refuse to certify the case to proceed forward as a class action**

In addition to the challenges faced in certifying classes for the California, Washington

and West Virginia claims due to Comcast's arbitration clause, for subscribers who decided to opt

out of the arbitration clause, Plaintiffs face the risk that the Court would decline to certify them

in a single class and would instead divide them into numerous regional subclasses based on

Comcast's different markets throughout the country.  Any such division into subclasses would be

detrimental to this case, because it would multiply astronomically the costs of seeking class

certification, given the many markets and jurisdictions in which Comcast operates.

Plaintiffs need not speculate about this risk.  In a similar antitrust tying case against a

different cable television provider, *In re Cox Enterprises, Inc. Set-Top Cable Television Box

Antitrust Litig.*, 09-ML-2048-C, 2011 WL 6826813 (W.D. Okla. Dec. 28, 2011), the district

court declined to certify a national class, holding that market power and antitrust injury could not

be proven on a national level and that multiple regional analyses would be required on these

issues.  *See id.* at **10-16.  The *Cox* plaintiffs moved for reconsideration of the district court's

order, arguing that the defendant had not provided the data necessary for the plaintiffs to brief

---

[4]  Comcast has suggested, for example, that Plaintiffs face the risk of being unable to establish that a retail market would ever exist for set-top boxes to be purchased by consumers and then used on Comcast's system.  Comcast has asserted that the absence of a set-top box retail market is simply a result of little to no consumer interest, directing Plaintiffs to trial efforts by Panasonic to sell set-top boxes in four select markets and Panasonic's decision not to proceed with such retail sales after finding a lack of consumer demand.

and argue regional markets in their class certification motion, but the court rejected the plaintiffs'

argument. *In re Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litig.*, 09-ML-

2048-C, Slip. Op. (W.D. Okla. Mar. 28, 2012) (attached as Exhibit 2).  The plaintiffs then

appealed the issue to the Tenth Circuit, but it held that the matter was not appropriate for

immediate review.  *See Gelder v. CoxCom, Inc.*, 696 F.3d 966, 969 (10th Cir. 2012).  The

plaintiffs then proceeded with regional classes.  Ultimately, one of the Cox cases was tried as a

bellwether case and while the jury found for the plaintiff, the court overturned the verdict and the

Tenth Circuit upheld that decision.  *Healy v. Cox Communs., Inc. (In re Cox Enters.)*, 871 F.3d

1093, 1112 (10th Cir. 2017).  The district court also referred some of the remaining cases to

arbitration and the Tenth Circuit affirmed.  *Alwert v. Cox Communs., Inc. (In re Cox Enters., Inc.*

*Set-Top Cable TV Box Antitrust Litig.)*, 835 F.3d 1195, 1214 (10th Cir. 2016).  In light of the

*Cox* plaintiffs' experience, it is clear that there is substantial risk in litigating the cases and the

proposed Settlement is a good one for Plaintiffs.

### D.   In these circumstances, the Settlement confers substantial benefits to the class members

In the resulting Settlement Agreement, Plaintiffs and Comcast agreed to a proposed

Settlement which provides, for class members who file appropriate, timely Claim Forms, cash or

in-kind relief for Comcast services as follows:

- If the Claimant rented at least one Set-Top Box from 1 to 35 months (0 to 3 years), the Claimant is entitled to select one of the following options:

  a.  ten U.S. dollars and no cents ($10.00) payable by check;

  b.  three (3) free months of Showtime (a maximum estimated $30.00 value); or

  c.  five (5) movie or television show rentals or purchases (up to a maximum $29.95 value).

  Plus, if the Claimant rented more than one Set-Top Box, one (1) additional movie or television show rental or purchase (up to a maximum $5.99 value).

- If the Claimant rented at least one Set-Top Box from 36 to 59 months (3 to 5 years), the Claimant is entitled to select one of the following options:

    a.  twelve U.S. dollars and fifty cents ($12.50) payable by check;

    b.  three (3) free months of Showtime and one (1) movie or television show rental or purchase (a combined up to maximum $35.99 value); or

    c.  six (6) movie or television show rentals or purchases (up to a maximum $35.94 value).

  Plus, if the Claimant rented more than one Set-Top Box, two (2) additional movie or television show rentals or purchases (up to a maximum $11.98 value).

- If the Claimant rented at least one Set-Top Box for 60 or more months (more than 5 years), the Claimant is entitled to select one of the following options:

    a.  fifteen U.S. dollars and no cents ($15.00) payable by check;

    b.  three (3) free months of Showtime and two (2) movie or television show rentals or purchases (a combined up to maximum $41.98 value); or

    c.  seven (7) movie or television show rentals or purchases (up to a maximum $37.97 value).

  Plus, if the Claimant rented more than one Set-Top Box, three (3) additional movie or television show rentals or purchases (up to a maximum $17.97 value).

Notice will be disseminated in a manner calculated to reach each member of the proposed Class. Current subscribers will receive Notice via an insert in their monthly bill and Notice will also be distributed through publication via various nationwide advertisements designed to reach a majority of former subscribers.[5] Finally, the parties will establish an internet settlement website that will display the notice and the claim form at www.SetTopBoxSettlement.com.

In light of the challenges to recovery and the expense and uncertainty of continued litigation, this result is a solid benefit to the Class.

---

[5] A declaration regarding the notice plan and its reach from Epiq Systems, Inc. will be submitted with final approval papers.

## ARGUMENT

**I.**   **This case satisfies the requirements for certification of a settlement class**

For a lawsuit to be maintained as a class action under Rule 23, the class must meet the four prerequisites of Rule 23(a) — numerosity of parties, commonality of factual and legal issues, typicality of claims and defenses of the class representative(s), and adequacy of representation — as well as the requirements of one of the subsections of Rule 23(b). *See* Fed. R. Civ. P. 23(a); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 296 (3d Cir. 2011). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that common issues predominate over individual ones and that a class action be superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b); *Sullivan,* 667 F.3d at 296. Class certification is only appropriate if "the trial court is satisfied, after a rigorous analysis, that the prerequisites . . . have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

"The [United States] Supreme Court has made clear that '[s]ettlement is relevant to a class certification.'" *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 619 (1997)). Accordingly, a district court may consider a proposed settlement when evaluating whether class certification is appropriate, *Pet Food,* 629 F.3d at 341 (citing *In re Prudential Ins. Co.,* 148 F.3d 283, 308 (3d Cir.1998)), and thus need not inquire, in the context of a request to certify a settlement class, "whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

While the Third Circuit Court of Appeals made clear in *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 (3d Cir. 2008), that a limited consideration of the merits *may* be relevant in considering a motion for class certification, it also made clear that the reason for this is not to predict which party will prevail on the merits. *Id.* at 317 n. 17. Rather,

12

consideration of merits issues is permissible only as those issues pertain to the requirements of Rule 23; if there is no such Rule 23 connection, the inquiry is inappropriate. *In re Cmty. Bank of N. Va. and Guaranty Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 622 F.3d 275, 294 (3d Cir. 2010), as amended (Oct. 20, 2010) (citations omitted). The touchstone of the class certification inquiry thus remains whether the Rule 23 requirements have been satisfied, not whether the plaintiffs have stated a cause of action. *Id.* at 294-95 (citations omitted).

The overarching purpose of Rule 23 is to ensure that courts will identify the common interests of the class members and evaluate the ability of the named plaintiffs and their counsel to fairly and adequately protect the interests of the class. *Id.* at 291 (citation omitted). The proposed class here is:

> All persons who:
>
> (i)    resided in and subscribed to Premium Cable in California, Washington, or West Virginia during the Class Period, or
>
> (ii)   subscribed to Premium Cable in any state in the United States during the Class Period and elected to opt out of Comcast's arbitration clause as reflected in Comcast's records;
>
> and paid Comcast a rental fee for a Set-Top Box at any time during the Class Period.
>
> Excluded from the Settlement Class are: (i) those persons who opt out of this Agreement as identified in paragraph 6; (ii) all commercial account customers; (iii) Comcast officers, directors, or employees, any entity in which Comcast has a controlling interest, and the affiliates, legal representatives, attorneys, heirs, or assigns of Comcast; (iv) Class Counsel and Class Counsel's employees; and (v) Judge Anita B. Brody and members of her judicial staff of the United States District Court for the Eastern District of Pennsylvania, as well as any federal, state, or local governmental agency, and any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staffs.

13

For the reasons set forth below, this proposed Class meets all of the Rule 23 requirements for certification.

**A.      The Elements of Rule 23(a) are satisfied**

      1.      <u>Numerosity is present</u>

The first element of Rule 23(a) requires that the class be of sufficient size that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1).  A plaintiff need not show that joinder is "impossible" to show that it is "impracticable."  *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 260 (E.D. Pa. 2012) (Pratter, J.).

"No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d. Cir. 2001) (holding that a class of 67 people was sufficiently numerous).  *See also In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 217 (E.D. Pa. 2012) (Brody, J.) (citing *Stewart*, 275 F.3d at 226-27 for the aforementioned point); *Chakejian v. Equifax Info. Servs.*, 275 F.R.D. 201, 209 (E.D. Pa. 2011) (similarly citing *Stewart*).

Some courts have said that the numerosity requirement also calls for consideration of whether geographic disbursement of the class members, in addition to their numbers, would make joinder impracticable. *See, e.g., Marsden v. Select Med. Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007) (Joyner, J.) (holding that where class members were not only sufficiently numerous, but also "likely very geographically dispersed, . . . [j]oinder . . . would [have] be[en] impracticable.").

There can be no legitimate dispute about numerosity here.  The members of the proposed Class number over one million.  Comcast has represented to Plaintiffs that the number of

Premium Cable subscribers in California exceeds 750,000, and that the number in Washington exceeds 350,000. Additionally, Comcast has represented to the Plaintiffs that tens of thousands of individuals have opted out of its arbitration clause. Numerosity is satisfied here.

2.    There are questions of law and fact common to all class members

Rule 23(a)'s second element requires a showing of the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While the rule is stated in the plural (*i.e.*, questions, not question), as the Supreme Court observed, only a single common question of law or fact need be identified. *Dukes*, 131 S. Ct. at 2556. *See also Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

The relevant issue for class certification "'is not the raising of common "questions"— even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" *Dukes*, 131 S. Ct. at 2551 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Commonality may be shown by demonstrating that "the class members have suffered the same injury." *Dukes*, 131 S. Ct. at 2551 (internal quotations, citation omitted). "Their claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Plaintiffs here all allege the same harm: the payment of supracompetitive prices as a result of Comcast's unlawful tying of its Premium Cable services to the rental of a Comcast set-top box. If the answers to whether Comcast engaged in such conduct and Plaintiffs suffered harm as a result are in the affirmative, those answers are common to all Settlement Class

Members.  There are no dissimilarities; Plaintiffs allege that Comcast's conduct was the same vis-à-vis each of them.

Indeed, the very nature of antitrust cases brought under Section 1 of the Sherman Act has routinely led courts to find that commonality exists.  *See Jerry Enters. of Gloucester County, Inc. v. Allied Beverage Group, L.L.C.*, 178 F.R.D. 437, 442 (D.N.J. 1998) (*citing* 4 *Newberg on Class Actions* § 18.25 at 18-81 (3d ed. 1992) (noting that "common issues such as conspiracy or monopolization have, almost invariably, been held to predominate over individual issues.")).  The same is true of the Sherman Act and the state laws—of California, Washington, and West Virginia—that are asserted here.  The essential elements of Plaintiffs' claims would require common proof under each of these laws.

### 3.   Plaintiffs' claims are typical of the claims of all class members

To satisfy the typicality requirement, the "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality is established by showing that the claims of the plaintiffs and the putative class "involve the same conduct by the defendant."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001).  "This does not require that all claims be identical."  *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2016 U.S. Dist. LEXIS 85853, at *27 (E.D. Pa. June 30, 2016).

Thus, typicality is established where the named plaintiffs allege that they and all putative class members have suffered economic damages arising from artificially inflated purchase prices as a result of the defendants' purported anticompetitive conduct.  *Processed Egg Prods.*, 284 F.R.D. at 261.  Those are precisely the kinds of allegations that Plaintiffs assert here, on behalf of themselves and the proposed Class.  Specifically, Plaintiffs allege that Comcast unlawfully tied the sale of its Premium Cable services to the rental of a Comcast set-top box; that this activity

substantially restricted competition in the market for the sale or rental of set-top boxes, while allowing Comcast to reap supracompetitive profits from Plaintiffs and all Class members; and that Plaintiffs and all Class members were injured in the same manner, by being forced to pay Comcast's supracompetitive rental fees to enjoy the full panoply of benefits of the Premium Cable services to which they subscribed.

4.   Plaintiffs and proposed Co-Lead Class Counsel have adequately represented the interests of the Settlement Class

The final prong of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This prerequisite has two components, the first concerning the experience and performance of class counsel and the second concerning the interests and incentives of the representative plaintiffs. *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012) (citation omitted). "Essentially, the inquiry into the adequacy of the representative parties examines whether 'the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class.'" *Processed Egg Prods.*, 284 F.R.D. at 261 (quoting *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988)).

a.   *Counsel have ample experience in this kind of litigation and have, and will continue to, ably represent both Plaintiffs and the entire Class*

Since the 2003 addition of subsection (g) to Rule 23, questions concerning the adequacy of class counsel are best discussed under that subsection's framework. *Cmty. Bank*, 622 F.3d at 292. Under Rule 23(g), a court that certifies a class must appoint class counsel, who is charged with fairly and adequately representing the interests of the class. Fed. R. Civ. P. 23(g)(1)(A). Rule 23(g) lists the following factors that courts must consider in appointing class counsel:

- the work counsel has done in identifying or investigating the potential claims in the action;

- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;

- counsel's knowledge of the applicable law, and

- the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  In addition, courts may consider any other matters pertinent to whether proposed class counsel is able to adequately represent the interests of the class.  Fed. R. Civ. P. 23(g)(1)(B).

Here, Plaintiffs seek appointment of Dianne M. Nast, Kenneth A. Wexler and Stephen A. Corr as Co-Lead Class Counsel.  Ms. Nast, Mr. Wexler and Mr. Corr have been involved in this case from its inception, conducting an initial investigation into the potential claims and being among the first counsel to file individual complaints, before the creation of this MDL.  Since then, they have played an integral role in organizing and pursuing the MDL litigation on behalf of Plaintiffs and the putative class.

Ms. Nast was previously appointed by this Court as Lead Counsel on October 23, 2009, via CMO No. 2 (Dkt. No. 23).  In 2012 she founded her own law firm, NastLaw LLC, and the Lead Counsel designation was transferred, by Order of November 28, 2012 (Dkt. No. 170), to her current firm.

Ms. Nast, Mr. Wexler, and Mr. Corr have extensive knowledge of antitrust law and class action practice, as well as substantial experience handling class actions and complex litigation, including antitrust litigation.  Their abilities, along with those of their equally qualified co-counsel, have been repeatedly recognized by courts.  *See* Biographies and/or Resumes of proposed Class Counsel, attached as Exhibits 3, 4, and 5.

They have demonstrated a commitment to prosecuting the case through the work they

18

have done to identify and investigate this case, their involvement in this case to date, and their participation in settlement negotiations, which were conducted from a position of knowledge and strength and on behalf of the entire Class.

Together with their many similarly qualified and experienced co-counsel, they have committed and will continue to commit the necessary resources to making sure that Plaintiffs and absent Class members are well represented in this litigation and proposed settlement.

For these reasons, Plaintiffs respectfully submit that the proposed Co-Lead Class Counsel meets the requirements for appointment under Rule 23(g) and thus likewise the first component of Rule 23(a)(4)'s adequacy requirement. *See Processed Egg Prods.*, 284 F.R.D. at 291 (E.D. Pa. 2012) (finding that adequacy was supported where the attorneys representing the plaintiffs and the class were highly qualified and experienced in complex class action litigation, including antitrust law; had previously been appointed and served as interim co-lead counsel in the case; and had demonstrated their dedication and ability, through their handling of the subject litigation).

### b. *The proposed Class Representatives' interests are aligned with those of the Class*

The Third Circuit has observed that the "linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey*, 681 F.3d at 183 (citations omitted). The adequacy requirement is designed to "ferret out" intra-class conflicts that may cause the interests of the representative plaintiffs to depart from those of the absent class members. *Id.* at 183-84 (citations omitted).

Here, the interests of the named Plaintiffs and the putative Class members are aligned; there are no conflicts that would render the named Plaintiffs inadequate representatives of the Class at large. The representative Plaintiffs and all members of the proposed Class have similar

interests in establishing liability against Comcast for the same kind of anticompetitive conduct and recovering, on behalf of each eligible claimant, relief resulting from that conduct. By pursuing this litigation, each representative Plaintiff necessarily advances the common interests of all other Class members.

For a conflict to preclude class certification, the disagreement between plaintiffs and other class members must be of a "fundamental" nature, such as where some class members claim to have been harmed by conduct that benefitted other class members or where a conflict exists among the allocation of remedies among class members with competing interests. *Dewey*, 681 F.3d at 184 (citations omitted). Thus, a purported conflict that is merely speculative or hypothetical is not a valid basis to deny class certification. *Id.* (citations omitted).

There is nothing to suggest that the representative Plaintiffs have significant interests antagonistic to those of the absent Class members in the vigorous pursuit of the Class claims against Comcast. Here, Plaintiffs seek to represent subscribers to Comcast's Premium Cable services, each of whom was impacted by Comcast's alleged wrongdoing in a like manner and each of whom has the same interest as the balance of the class in establishing Comcast's liability and obtaining relief.

5.     The Settlement Class Members are ascertainable

While not explicitly found in the Federal Rules, courts have read into Rule 23 an implicit requirement that a class be "definite" or "ascertainable." A proper class definition is necessary to ensure clarity as to who is entitled to relief, who is bound by a final judgment, and who is entitled to the "best notice practicable" in a Rule 23(b)(3) action. *Byrd v. Aaron's, Inc.*, 784 F.3d 154, 175 (3d Cir. 2015); Manual § 21.222; 5 James W. Moore et al., *Moore's Federal Practice* 23.21[3][d] (Matthew Bender 3d ed. 2013). "For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the

20

class by reference to objective criteria." 5 James W. Moore et al., *Moore's Federal Practice* 23.21[3][a] (Matthew Bender 3d ed. 2013)). *See also Byrd*, 784 F.3d at 164.

The Third Circuit provided clarification to what is required by the ascertainability standard in the *Byrd* case. Building upon the Third Circuit's previous *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013) and *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) decisions, the Court in *Byrd* explained that ascertainability requires: 1) that the class members be identifiable by objective criteria and 2) "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." 784 F.3d at 163 (citation omitted). "The ascertainability requirement consists of nothing more than these two inquiries. And it does not mean that a plaintiff must be able to identify all class members at class certification—instead, a plaintiff need only show that 'class members *can* be identified.'" *Id.* (quoting *Carrera*, 727 F.3d at 308 n.2 (emphasis added by the Court in *Byrd*)).

While there is no question that Comcast can readily ascertain Settlement Class Members who are current customers via its own internal records in order to send them direct notice of the Settlement, *Larson v. AT & T Mobility LLC*, 687 F.3d 109, 123 (3d Cir. 2012) and *Pollock v. Energy Corp. of Am.*, No. 10-1553, 2013 U.S. Dist. LEXIS 141139, *16 (W.D. Pa. Sept. 16, 2013), this Court has previously expressed concern that former Comcast subscribers where Comcast lacks records would not be ascertainable. It is important to note that Comcast does not challenge the ascertainability of the Settlement Class. Comcast's lack of records on these Settlement Class Members should not prelude preliminary approval of the proposed Settlement because the Settlement Class meets the criteria set out in *Byrd*.

Additionally, on a previous motion for preliminary approval, this Court found that the settlement class was not ascertainable and denied the motion. Plaintiffs appealed and the Third Circuit held that:

> [t]he concern that a defendant be "able to test the reliability of the evidence submitted to prove class membership," *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d. Cir. 2013), is not implicated by this case, where the defendant has agreed that the evidence regarding class membership is sufficiently reliable. Similarly, the concern that "[t]he method of determining whether someone is in the class . . . be administratively feasible," *id.*, is not implicated by this case, because the settlement agreement removes the need for a trial. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 335 (3d Cir. 2011).

*In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 656 Fed. App'x 8, 8-9 (3d Cir. 2016). The same circumstances present in that previous settlement are still present here.

a.    *The Settlement Class is identifiable based upon objective criteria*

First, in accordance with law of this Circuit, members of the Settlement Class are identifiable based upon objective criteria. "Many courts and commentators have recognized that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Marcus*, 687 F.3d at 592-93 (citing *Chiang v. Veneman*, 385 F.3d 256, 271 (3d Cir. 2004) (holding that "defining a class by reference to those who 'believe' they were discriminated against undermines the validity of the class by introducing a subjective criterion into what should be an objective evaluation"), *abrog. on other grounds by Hydrogen Peroxide*, 552 F.3d at 318 n.18. In order for a Comcast subscriber to determine whether he or she is a Settlement Class Member, that subscriber must meet several objective criteria: 1) either resides in California, Washington State, or West Virginia OR opted out of Comcast's arbitration clause; 2) subscribed to Premium Cable in the United States; 3) paid Comcast a rental fee for the set-top box during the Class Period; and 4) does not fall within any categories for exclusion. None of these components requires the

Court to rely on impermissible subjective standards, potential Class members' subjective beliefs, or a resolution of the merits of the claims. *Cf.* Manual § 21.222 (indicating in its discussion of ascertainability that the "order defining the class should avoid subjective standards (e.g., a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated against"). Rather, the criteria provide a clean and straightforward way to identify "a particular group [that] was harmed during a particular time frame, in a particular location, in a particular way," in accordance with law from this Circuit. *Pollock*, 2013 U.S. Dist. LEXIS 141139, *14 (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013)). Thus, the first criterion in the Court's ascertainability analysis is met.

> b.  *The Settlement Class can be verified by an administratively-feasible mechanism using objective evidence*

Second, the Court must be satisfied that there is a "reliable, administratively feasible" method to identify the Settlement Class Members. This does not mean there is a "records requirement." As the Third Circuit recently explained in *Byrd*:

> We were careful to specify in *Carrera* that "[a]lthough some evidence used to satisfy ascertainability, such as corporate records, will actually identify class members at the certification stage, ascertainability only requires the plaintiff to show that class members can be identified." *Id.* at 308 n.2 (emphasis added). Accordingly, there is no records requirement. *Carrera* stands for the proposition that a party cannot merely provide assurances to the district court that it will later meet Rule 23's requirements. *Id.* at 306.

784 F.3d at 164. Here, current customers are indisputably ascertainable from Comcast's records. As to former customers, Comcast has represented that it may have records by which it can verify Class membership back to 2011, depending on location. In the absence of records maintained by Comcast, Class membership may be demonstrated by a customer's account number, cancelled checks, old bills and invoices, credit card receipts, geographic information coupled with other identifying variables (such as the amount paid for cable service per month), communications to

or from Comcast during the relevant period, police reports, insurance claims, and other indicia from which Comcast can determine or challenge a claimant's status as a Former Subscriber. These materials preserve Comcast's due process rights, as it is not foreclosed from challenging these indicia of class membership. *Id.* at 171.

With this backdrop, the parties have proposed a Claim Form requiring Settlement Class Members to affirm, under penalty of perjury, that the information provided in the Claim Form is true and correct.  Beyond that, Comcast can confirm class membership in two ways:

1. Comcast can check its records.

2. For Former Subscribers for whom Comcast no longer has records, they can submit additional documentation as described above, which Comcast has the right to question.

Either way provides objective proof of class membership.

Unlike *Carrera*, where the plaintiffs relied upon "affidavits alone, without any objective records to identify class members or a method to weed out unreliable affidavits," unreliable affidavits *can* be weeded out if a Settlement Class Member is unable to provide documents showing his or her membership in the class.[6] *Byrd*, 784 F.3d at 170.  "This is a far cry from an unverifiable affidavit, or the absence of any methodology that can be used later to ascertain class members."  *Id.*  The requirement of ascertainability is thus met in this proposed Settlement Class.

**B.      The requirements of Rule 23(b)(3) are likewise met in this settlement context**

Having satisfied the four requirements of Rule 23(a), the proposed Class must also meet the requirements of at least one of the subsections of Rule 23(b).  Under Rule 23(b)(3), a class may be certified where "questions of law or fact common to class members predominate over

---

[6]  For example, in *Carrera*, the Third Circuit noted that the plaintiff's proposed retail records did not identify a single purchaser of the diet supplement at issue.  *Carrera*, 727 F.3d at 308-09. Here, the proposed records which would be used to verify or "weed out" unreliable affidavits *would* show if a claimant subscribed to Comcast cable.

24

any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  As noted above, in the context of evaluating certification of a proposed settlement class, Rule 23(b)(3)'s trial manageability need not be considered, since a settlement would render that issue moot.  *See Amchem*, 521 U.S. at 620.

1.      The questions of law and fact that are common to the Class predominate over individual issues

The predominance inquiry aims to determine whether a proposed class is sufficiently cohesive that it may be adjudicated by representative plaintiffs.  *Hydrogen Peroxide,* 552 F.3d at 310-11 (citing *Amchem,* 521 U.S. at 623).  The predominance requirement is "parallel" to Rule 23(a)(2)'s commonality prong, but requires a more rigorous analysis by the reviewing court. *Sullivan,* 667 F.3d at 297.

The question as to predominance is whether proof of the essential elements of the cause of action appropriately may be handled on a class-wide basis, rather than requiring individualized treatment.  *Hydrogen Peroxide,* 552 F.3d at 311.  While the Third Circuit has made clear that a finding of predominance is not a foregone conclusion in antitrust cases, it has also observed the Supreme Court's recognition that predominance frequently is met in such cases.  *Id.* at 321-22 (citing *Amchem,* 521 U.S. at 625).  "This is because these types of claims typically arise from an alleged common course of conduct on the part of the defendant, and depend upon common proof of liability, such as evidence of the defendants' conduct." *Processed Egg Prods.*, 284 F.R.D. at 292.

The elements of the federal antitrust claim in this case are (1) a violation of § 1 of the Sherman Act, (2) individual injury (*i.e.*, antitrust impact) resulting from that violation, and (3) measurable damages.

"[A] tying arrangement may be defined as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product. . . ." *N. Pac. Ry. Co. v. U.S.*, 356 U.S. 1, 5 (1958). Antitrust concerns over tying arrangements arise when the seller can use its market power in the tying market (here, Premium Cable) to force buyers to purchase the tied product (here, set-top boxes) that they otherwise would not, thereby restraining competition in the tied product market. *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 510 (3d Cir. 1998).

> *Per se* liability exists where the defendant is found to have appreciable market power in the tying market. In such cases, the ability to leverage this power to restrain trade in the tied market is presumed and no inquiry need be made into the actual prevailing market conditions in that market. *See Jefferson Parish,* 466 U.S. at 15–18 & n. 25, 104 S.Ct. at 1559–61 & n. 25; *Town Sound,* 959 F.2d at 477. Where appreciable tying market power cannot be shown, inquiry into the tied product market cannot be avoided, and the plaintiff therefore has the more difficult burden of showing that the arrangement violated the rule of reason because it unreasonably restrained competition in the tied product market. *See Jefferson Parish,* 466 U.S. at 29, 104 S.Ct. at 1567.

*Id.* at 511.

Section 17200 of the California Business and Professions Code "borrows violations of other laws. . . and makes those unlawful practices actionable under the UCL." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (Cal. App. 2d Dist. 2012) (citation omitted). "'[V]irtually any law or regulation – federal or state, statutory or common law – can serve as [a] predicate for a . . . [section] 17200 'unlawful' violation.'" *Id.* (citations omitted). This includes the Sherman Act.

The law of Washington is also guided by federal antitrust law. *State v. Black*, 100 Wash. 2d 793, 799 (Wash. 1984) (noting that RCW 19.86.030 prohibiting contracts or conspiracies in restraint of trade is State's equivalent of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and that the Legislature "anticipated that our courts would be guided by the interpretation given

26

by federal courts to their corresponding federal statutes"). That holds true for tying claims made under Washington law. *Ridgeview Properties v. Starbuck*, 96 Wash. 2d 716, 720-21 (Wash. 1982) (exclusively citing federal cases to describe a tying claim under Washington law).

Similarly, the West Virginia Legislature has directed its state courts to apply federal decisional law in conjunction with West Virginia antitrust statutes. *Gray v. Marshall Cnty. Bd. Of Educ.*, 179 W.Va. 282, 286 (1988) ("West Virginia antitrust statutes 'shall be construed liberally and in harmony with ruling judicial interpretations of comparable federal anti-trust statutes'"); W.Va. Code 47-18-16 (1978). This principle has been applied in a West Virginia Supreme Court of Appeals antitrust decision concerning tying arrangements. *See Kessel v. Monongalia Cnty. Gen. Hosp. Co.*, 220 W.Va. 602, 610 (2007).

Plaintiffs' burden in moving for class certification is not to *prove* each of these elements, but to demonstrate that Plaintiffs would be *capable* of proving them through common, rather than individualized proof.

Here, common issues of liability predominate over any individual issues. If an individual Plaintiff proves that Comcast unlawfully tied the sale of its Premium Cable services to the rental of a Comcast set-top box, that proof would be the same for any other person seeking to establish that fact. Likewise, if an individual Plaintiff were to prove that this unlawful tying permitted Comcast to reap supracompetitive prices from its Premium Cable subscribers, that proof of injury likewise would be the same for every other Premium Cable subscriber. Thus, where all Class members' claims are premised upon their injury resulting from Comcast's conduct in preventing competition from entering the market for set-top boxes, there can be little doubt that predominance is sufficiently demonstrated and that certification is appropriate.

2.   <u>Class treatment of this matter is the best method to achieve judicial efficiency and ensure that all Plaintiffs have the opportunity to assert their claims</u>

The superiority requirement tests whether a class action, as opposed to individual litigation or other available methods of adjudication, is the best method for achieving a fair, efficient adjudication of a controversy.  *See Processed Egg Prods.,* 284 F.R.D. at 293 (citing *Newton,* 259 F.3d at 191).  Rule 23(b) sets for the factors relevant to this inquiry, which (absent manageability, which need not be considered here, *Amchem,* 521 U.S. at 620) include:

- class members' interests in individually controlling the prosecution or defense of separate actions;

- the extent and nature of any litigation concerning the controversy already begun by or against class members; and

- the desirability (or not) of concentrating the litigation of the claims in the particular forum.

Fed. R. Civ. P. 23(b)(3)(A)-(D).  Effectively, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."  *Processed Egg Prods.,* 284 F.R.D. at 293-94 (quoting *Prudential,* 148 F.3d at 316).

This case satisfies the "superiority" requirement.  Handling this case as a class action will achieve economies for both the litigants and the Court, avoiding hundreds of thousands of individual adjudications that would dismally clog the system.  *See id.* at 294 (where class members numbered perhaps over 13,000 and were geographically widely dispersed, individual adjudications would have been a "potentially crushing strain on and inefficient application of judicial resources").

In addition, the claims here are low-dollar-value claims, relative to the costs of prosecuting an antitrust lawsuit, as discussed at length in Plaintiffs' briefing in opposition to

Comcast's Motion to Compel Arbitration (*see* Doc. Nos. 128, 133).  In such circumstances, "a class action facilitates spreading of the litigation costs among the numerous injured parties and encourages private enforcement of the statutes."  *In re Warfarin Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).  This concept is especially relevant in this case.

As discussed extensively in Plaintiffs' opposition to Comcast's initial Motion to Compel Arbitration, absent the class procedure, the many Settlement Class Members may be effectively foreclosed, by both litigation (particularly expert economic) costs and the inability to find counsel, from pursuing their claims.  Class treatment is thus the only practical means through which Plaintiffs' claims can be effectively resolved.  For this reason, there has been no interest by individual plaintiffs to separately prosecute these actions.

Even if this practical hurdle did not exist, settlement on a class basis is superior to individual litigation and adjudication because it provides Class members with prompt compensation for their injuries.  By contrast, compensation resulting from litigation is highly uncertain and may not be received before lengthy trial and appellate proceedings are complete.  There are numerous risks that Plaintiffs' cases might never get to trial, and the risks the Plaintiffs would face on appeal are even greater.  Therefore, class treatment of this matter is the best method to achieve judicial efficiency and ensure that Plaintiffs and the Class have the opportunity to assert their claims.

**C.     Proposed Co-Lead Class Counsel meet the requirements for appointment under Rule 23(g)**

Plaintiffs respectfully submit that the proposed Co-Lead Class Counsel, Dianne M. Nast of NastLaw LLC, Kenneth A. Wexler of Wexler Wallace LLP, and Stephen A. Corr of Stark & Stark meet the requirements for appointment under Rule 23(g), for the reasons set forth above in the discussion of Rule 23(a)'s adequacy requirement.

## II.   Preliminary approval of the Settlement is appropriate

Federal courts favor class action settlements. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (recognizing the "strong presumption in favor of voluntary settlement agreements" and noting that it is "especially strong" in the context of class action cases); *Warfarin Sodium*, 391 F.3d at 535 ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"). Approval of a class action settlement is a two-step process, the first involving preliminary approval of the settlement and its related processes (such as notice, the claim form, a deadline for submitting objections, and the schedule for a final fairness hearing), and the second being final approval of the settlement after a fairness hearing. *See Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008); *Curiale v. Lenox Group, Inc.*, Civ. A. 07-1432, 2008 WL 4899474, at *4 (E.D. Pa. Nov. 14, 2008). These preliminary and final procedures are summarized in the Manual § 21.6.

A class action settlement warrants final approval if it is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). At the preliminary approval stage, however, a court does not have to reach a final conclusion as to the fairness of the settlement. It only has to make a preliminary evaluation as to whether the proposed settlement is within the range of possible approval and free of obvious deficiencies or reasons to doubt its fairness. *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004); *Thomas v. NCO Fin. Sys., Inc.*, Civ. A. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002). A settlement falls within the range of possible approval under Rule 23 if there is a conceivable basis for presuming that the standard applied for final approval will be satisfied. Fed. R. Civ. P. 23(e); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009); *Prudential*, 148 F.3d at 316; *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983). If a settlement falls within the range of possible

30

approval, at this stage it is deemed fair, reasonable and adequate to the class and notice should be given to class members to allow them the opportunity to learn about and comment on the proposed settlement. *Samuel v. Equicredit Corp.*, No. Civ. A. 00-6196, 2002 WL 970396, at *1 n.1 (E.D. Pa. May 6, 2002).

In considering whether to give preliminary approval, the appropriate considerations include those of fairness and whether: (1) the settlement negotiations occurred at arm's length, (2) there was sufficient discovery, and (3) the proponents of the settlement are experienced in similar litigation. *Gates*, 248 F.R.D. at 439; *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003); *Curiale*, 2008 WL 4899474, at *9.[7]

The settlement proposed in this case meets these factors.

### A.     The Proposed Settlement and Plan of Distribution satisfy a preliminary evaluation of reasonableness

At the final approval stage, a multi-factor test (established in the seminal case of *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)) applies to determine whether a settlement ultimately should be approved. *See Ins. Brokerage*, 579 F.3d at 258.  At the present stage, however, "the Court need not address these factors, as the standard for preliminary approval is far less demanding." *Gates*, 248 F.R.D. at 444 n.7.  Preliminary approval is not a binding commitment to final approval, but merely a determination that the settlement has no obvious shortcomings and generally appears to be reasonable. *Id.* at 438.

---

[7]  These same cases also provide that where only a small fraction of the class has objected, this is an additional factor warranting preliminary approval. *Gates*, 248 F.R.D. at 439; *Linerboard*, 292 F. Supp. 2d at 638; *Curiale*, 2008 WL 4899474, at *9.  While no objections have been received to date, the deadline for submitting objections is generally established upon preliminary approval, after notice of the settlement has been provided, consistent with the schedule that Plaintiffs propose here.  Under these circumstances, the appropriate time for considering objections (if any) would be after the deadline for submitting objections has passed.

Here, the proposed Settlement has no such shortcomings and appears reasonable.  As discussed above, it provides actual value for Class Members in the form of cash or in-kind relief, to be selected by the individual Class Member.

Plaintiffs, if the Class is certified and the settlement preliminarily approved, also intend to file a motion for an award of attorney fees, costs and expenses, the combined total of which will not exceed $1.1 million, which is far less than the collective lodestar.  Based on the $15.5 million value of the Settlement, the combined attorney fees, costs and expenses are capped at 7.1% of the Settlement.  The attorney fees, costs and expenses will be paid separately by Comcast and will not result in a reduction of benefits to Class members.

In that motion, Plaintiffs also plan to request that the Court to approve payments of $1,000.00 each to named Plaintiffs James E. Deanne, William Gonzales, John Martich and Carrie D. Cooper for their efforts in prosecuting this litigation on behalf of the Class.  *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.") (citations, internal quotations omitted).

Overall, the Settlement represents a good result for the proposed Class.

**B.    The Settlement is the result of arm's-length negotiations**

A settlement reached by experienced counsel based on arm's-length negotiations is entitled to a presumption of fairness. *Sullivan*, 667 F.3d at 320 n.54; *In re CIGNA Corp. Sec. Litig.*, 2007 WL 2071898, at *2 (E.D. Pa. July 13, 2007); *In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2003 WL 23316645, at *2 (E.D. Pa. Sept. 5, 2003); *see also Linerboard*, 292 F. Supp. 2d at 640 (holding that "[a] presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (quoting *Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)).

The proposed Settlement is the result of non-collusive, good faith efforts between adversaries to resolve the case and was reached only after robust negotiations encouraged by this Court and guided by an independent and experienced mediator.  This factor thus supports preliminary approval.  *See Gates,* 248 F.R.D. at 444 (granting preliminary approval to a settlement following two days of mediation where there was "nothing to indicate that the proposed settlement . . . [was] not the result of good faith, arms-length negotiations between adversaries," and the Court had no reason to doubt that the settlement involved the same "vigorous and independent lawyering" that characterized the nearly two years of litigation preceding settlement).

### C.      The Settlement in this case was reached after the provision of sufficient information, through discovery or discussion with Comcast

This MDL has been pending for over six years and has involved sufficient discovery and exchange of information to support this Settlement.  While the formal discovery has involved the issue of Comcast's arbitration clause, there has been extensive discussion with Comcast, in the course of the mediation and settlement efforts, about technology and other matters relevant to Plaintiffs' claims.

Moreover, Plaintiffs have learned additional information about technology issues and their antitrust tying allegations, albeit on a less formal basis, that has informed them of the substantial risks of continued litigation and the realistic risk that nothing might be recovered were they to proceed.  And, the Settlement Agreement provides for Plaintiffs to take confirmatory discovery of Comcast, to ensure that the information learned informally during settlement discussions is true and accurate.

Finally, numerous legal developments have occurred during the course of this case— including the issuance of the *AmEx III, Concepcion,* and *Cox* decisions discussed above that bear

on Plaintiffs' knowledge.  While these legal opinions are not discovery, they are comparable to it in many respects, further shedding light on Plaintiffs' ability, practically and successfully, to pursue their case.

Where appropriate, other Courts have granted preliminary approval of settlements before the undertaking of formal merits discovery.  *See, e.g., Gates,* 248 F.R.D. at 444 (granting preliminary approval of settlement reached before discovery on the merits); *Thomas*, 2002 WL 1773035, at *5 (granting preliminary approval of settlement where there was "no reference to any formal discovery").  Such approval would also be appropriate here.

### D. The Parties are experienced in similar litigation

The negotiations were conducted for Plaintiffs by counsel with extensive experience in litigating antitrust lawsuits, class actions, and other complex cases. Proposed Co-Lead Class Counsel and their co-counsel know how to pursue a case of this type and are intimately familiar with the strengths and weaknesses of this case in particular.  The extensive experience of class counsel in litigating similar cases, while not dispositive, suggests a fair settlement.  *Fisher Bros. v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("[T]he professional judgment of counsel involved in the litigation is entitled to significant weight.").

Proposed Co-Lead Class Counsel and their co-counsel firmly believe that the proposed Settlement is fair, reasonable and adequate, and should be approved.  Courts in other cases have found it appropriate to consider strongly the recommendations of experienced counsel who have negotiated arm's-length settlements.  *See, e.g., Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced counsel . . . who have negotiated this settlement at arms-length and in good faith").

### III.      The proposed form and manner of notice and schedule are reasonable

Federal Rule of Civil Procedure 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement. For class actions certified under Rule 23(b)(3), the court must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, the notice must clearly and concisely state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B)(i-vii).

Individual notice should be provided wherever practicable.  Manual § 21.312; *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 491 (E.D. Pa. 2003) ("The due process requirements of Federal Rule of Civil Procedure 23 demand that, prior to final approval of a class action settlement, class members be given the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts."); *Ikon Office Solutions*, 194 F.R.D. at 175 ("In 23(b)(3) actions, class members must receive the best notice practicable under the circumstances, including individual notice to all . . . [class members] who can be identified through reasonable effort.") (citations, internal quotations omitted); *Thomas*, 2002 WL 1773035, at *7 ("The requirement that individual notice be sent to all class members whose names and addresses may be ascertained with reasonable effort is mandatory.").

The Notice provided under the Settlement meets all such requirements.

### A.    Plaintiffs propose providing direct and publication notice

First, Comcast will provide Notice of the proposed Settlement to Current Subscribers in their monthly bill.  The notice will direct Current Subscribers to a settlement website that will have a more robust exposition of the Settlement terms.  *See* Exhibit C to the Settlement Agreement.

Second, Notice will be provided by publication in various nationwide publications as described in Exhibit D to the Settlement Agreement.

Third, Notice will be provided to Class members by establishing an Internet settlement website that will display the following: (i) Notice in a form substantially similar to Exhibit E to the Settlement Agreement; (ii) contact information for Co-Lead Class Counsel, in the form of firm name, attorney name, a phone number, address, e-mail address, and website address; (iii) a complete copy of the Settlement Agreement; (iv) frequently asked questions; and (v) a Claim Form that can be submitted electronically.

The forms of notice have been designed to reach a majority of Class members.  Absent Class members therefore will receive ample notice of class certification and the proposed Settlement.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 527 (D.N.J. 1997), *aff'd,* 148 F.3d 283, 311 (3d Cir. 1998) (notice is sufficient where it informs class members of the nature of the litigation, the general terms of the settlement, where complete information can be located, the time and place of the final fairness hearing, and the opportunity for objectors to be heard); *see also Nichols v. SmithKline Beecham Corp.*, Civ. A. 00-6222, 2005 WL 950616, at *9 (E.D. Pa. Apr. 22, 2005) (same as *Prudential*).

36

**B.      The proposed Notice Plan assures that Class Members will receive adequate notice of the Settlement**

The proposed Notice Plan meets all legal requirements, and the Notices themselves provide a comprehensive explanation of the Settlement in layperson's terms, including that Plaintiffs' counsel may seek up to $1.1 million in attorney fees, costs and expenses, to be paid separately by Comcast.  Such notice is required by Rule 23(h)(1) and is standard in class action settlements.  *See, e.g., Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 226 (D.N.J. 2005) (explaining that the class notice included "the fees and expenses requested by Class Counsel, and incentive awards requested for Representative Plaintiffs); *Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 101 (D.D.C. 2013) (noting substantial efforts undertaken by parties to communicate attorney fee request as reason to overrule objection to request); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 139 (S.D.N.Y. 2001) ("The Class Notice shall provide information about the amounts being sought by Plaintiff's Counsel as Attorneys' Fees and Expenses. It also shall explain that the Company will pay the fees and expenses awarded by the Court to Plaintiff's Counsel and that such fees and expenses will not be paid out of funds designated for relief to Policy and Annuity owners under this settlement.").

The proposed notice materials are based on samples promulgated by the Federal Judicial Center.[8]  They explain the case in "clear, concise, easily understood language,"[9] and fairly apprise Class members of the Settlement's terms and their options in connection with the proceedings, including the opportunity to object and attend and participate in the Final Fairness Hearing.  The materials are also neutral and convey no opinion of the Court about the Settlement.

---

[8]  *See* www.fjc.gov (last visited Feb. 20, 2018).

[9]  *See* Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at 5 (Federal Judicial Center 2010), available at: https://www.fjc.gov/content/judges-class-action-notice-and-claims-process-checklist-and-plain-language-guide-0 (last visited Feb. 20, 2018).

**C.     It would be appropriate to approve the Claim Form and Plan of Distribution and authorize the Class Administrator to disseminate notice of the Settlement and receive and process Class Member claims**

Attached as Exhibit A to the Settlement Agreement is a Claim Form, which Plaintiffs propose each Class member seeking to participate in the Settlement should be required to complete and submit to the Claims Administrator, at the address specified in the Class Notice, postmarked no later than the deadline set forth on the Claim Form.

Plaintiffs request that the Court appoint Epiq Systems, Inc. ("Epiq"), as the Claims Administrator and authorize it to disseminate Notice of the Settlement and receive and process Class member claims.  Epiq has experience in many other class actions, including other similar antitrust cases.  *See, e.g., In re Natural Gas Antitrust Cases I – IV*, Case Nos. 4221, 4224, 4226 and 4228 (Ca. Sup. Ct.); *In re Western States Wholesale Natural Gas Antitrust Litig.*, Case No. 2:03-cv-1431 (D. Nev.).[10]

**D.     The proposed schedule is reasonable**

Preliminary approval includes setting the deadlines for providing notice to the class, objecting to class certification or the settlement, submitting papers related to final approval and an award of attorney fees and costs, and submitting claims, as well as the date for the final fairness hearing.  That hearing will provide a forum for proponents and opponents (if any) of the Settlement to address its terms, including its fairness, adequacy and reasonableness, as well as the motion for attorney fees and costs.

Plaintiffs propose, and seek the Court's approval of, the following schedule for these events:

_____

[10]  Additional information about Epiq may be found on the firm's website: http://www.epiqglobal.com/en-us/how-we-help/class-action-administration (last visited Feb. 20, 2018).

|   | Event | Timing | Section |
|---|---|---|---|
| 1 | Motion for preliminary approval filed | February 22, 2018 | |
| 2 | Notice to be posted on www.SetTopBoxSettlement.com | 30 days after entry of an order granting Preliminary Approval | 4.1.3 |
| 3 | Notice to be published and inserted in monthly bill | 120 days after entry of an order granting Preliminary Approval | 4.2 |
| 4 | Deadline for filing motions for final approval and for attorney fees and reimbursement of expenses | 150 days after entry of an order granting Preliminary Approval | 7; 9.5 |
| 5 | Postmark deadline for objections, opt-outs and notices of intent to appear at final fairness hearing | 180 days after entry of an order granting Preliminary Approval | 6.1; 6.4 |
| 6 | Deadline to Report to Court on opt-outs | 21 days after the opt-out deadline (201 days after Preliminary Approval) | 6.2 |
| 7 | Deadline for responding to any objections | No fewer than ten (10) days before Final Fairness Hearing | 6.5 |
| 8 | Final Fairness Hearing | Plaintiffs respectfully request this hearing be scheduled 215 days after Preliminary Approval, should the Court's schedule permit | |
| 9 | Postmark deadline for filing claims | 10 days prior to the date of the Final Approval Hearing | 9.8.2 |
| 10 | Date by which attorney fees will be paid | 30 days after Effective Date, as defined in the Settlement Agreement | 9.5 |
| 11 | Date by which Class members will receive checks or credits | 120 days after Effective Date, as defined in the Settlement Agreement | 9.3 |
| 12 | Deadline to dispute Settlement credits or benefits | 30 days after issuance of credits or benefits | 9.8.3 |

| 13 | Expiration of In-Kind Relief | In-Kind Relief will expire ninety (90) days after their issuance, after which they expire by their own terms | 9.1.7 |
| 14 | Expiration of Settlement benefits other than credits | Settlement checks void if the check is not cashed within 180 days of issuance | 9.4 |

## CONCLUSION

Plaintiffs respectfully request that the Court certify the proposed Settlement Class and grant preliminary approval of the parties' Settlement. The Settlement falls well within the range of possible approval, there are no grounds to doubt its fairness, and it was negotiated at arm's length by experienced counsel who support it.

The form of Notice, plan for dissemination of Notice to the Class, Claim Form, and proposed Plan of Distribution each warrant approval, and it would be appropriate to appoint Epiq as Claims Administrator and allow it to disseminate Notice and receive and process Class member claims. Finally, it would be appropriate to establish a schedule for the submission of objections and completing the settlement approval process, including the Final Fairness Hearing.

DATED:  February 22, 2018                    Respectfully submitted,


                                             */s/ Dianne M. Nast*
Stephen A. Corr                              Dianne M. Nast
Begley, Carlin & Mandio, LLP                 Erin C. Burns
680 Middletown Boulevard                     NastLaw LLC
Langhorne, Pennsylvania  19047-0308          1101 Market Street, Suite 2801
                                             Philadelphia, Pennsylvania 19107

*Plaintiffs' Liaison Counsel*                *Plaintiffs' Lead Counsel*

Kenneth A. Wexler
Edward A. Wallace
Wexler Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, Illinois 60602

Michael L. Murphy
John W. Barrett
Bailey & Glasser, LLP
209 Capitol Street
Charleston, West Virginia 25301

Robert L. Devereux
Devereux Murphy LLC
190 Carondelet Plaza, Suite 1100
St. Louis, Missouri 63105

Robert M. Foote
Matthew J. Herman
Foote, Meyers, Mielke & Flowers, LLC
28 North First Street, Suite 2
Geneva, Illinois 60134

Daniel E. Becnel, Jr.
Daniel E. Becnel, III
Matthew B. Moreland
Becnel Law Firm
P.O. Drawer H
Reserve, Louisiana 70084

Peter Macuga
Macuga, Liddle & Dubin, P.C.
975 East Jefferson Avenue
Detroit, Michigan 48207-3101

William M. Sweetnam, Esquire
Sweetnam LLC
100 North La Salle Street, Suite 1010
Chicago, Illinois 60602

Leonard V. Fodera
Fodera & Long
1500 Walnut Street, Suite 900
Philadelphia, Pennsylvania 19102

Harry F. Bell, Jr.
William L. Bands
Jonathan W. Price
The Bell Law Firm, PLLC
30 Capitol Street
Charleston, West Virginia 25301

John F. Edgar
Michael D. Pospisil
Edgar Law Firm LLC
1032 Pennsylvania Avenue
Kansas City, Missouri 64105

Daniel E. Gustafson
Karla M. Gluek
Gustafson Gluek, PLLC
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, Minnesota 55402

Dennis G. Pantazis
Brian M. Clark
Wiggins, Childs, Quinn & Pantazis, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203

*Plaintiffs' Steering Committee*