**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

```
_____
                                :
IN RE: COMCAST CORP. SET-TOP    :
CABLE TELEVISION BOX            :          CIVIL ACTION
ANTITRUST LITIGATION            :          NO. 09-md-2034
_____ :
```

September 5th, 2018                                    **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

Plaintiffs James E. Deanne, William Gonzales, John Martich, and Carrie D. Cooper (collectively, "Plaintiffs"), on behalf of themselves and the putative class members they seek to represent, have negotiated and agreed to a Fourth Amended Class Action Settlement Agreement ("Settlement Agreement") with Defendants Comcast Corporation, Comcast Holdings Corporation, Comcast Cable Communications, Inc., and Comcast Cable Communications Holdings, Inc. (collectively, "Comcast") in this multidistrict litigation ("MDL"). On February 22, 2018, Plaintiffs filed a Motion for Certification of a Settlement Class and Preliminary Approval of Class Action Settlement. Plaintiffs move for an order: (1) granting preliminary approval of the Settlement Agreement; (2) certifying a Settlement Class; (3) approving the proposed forms of Notice and directing Notice to the Settlement Class; (4) approving the proposed Claim Form; (5) appointing a Claims Administrator to disseminate Notice and receive and process Class Members' claims; and (6) setting a schedule for completion of the Settlement approval process. For the reasons set forth below, I will grant the motion in part and preliminarily approve the Settlement Agreement and preliminarily certify the Settlement Class. Because of deficiencies in the proposed Notice and proposed Claim Form, I will deny the portion

of the motion that seeks approval of the proposed Notice and proposed Claim Form, the appointment of a Claims Administrator, and the establishment of a schedule for completion of the Settlement approval process.  In order to cure these deficiencies, Plaintiffs will be ordered to submit an amended motion that only seeks approval of revised proposed forms of Notice, a revised proposed Claim Form, appointment of a Claims Administrator, and a revised proposed schedule for completion of the Settlement approval process.

## I. BACKGROUND

Comcast is the largest provider of cable multi-channel video programming distribution in the United States, servicing over twenty-four million customers in thirty-nine states and the District of Columbia.  Comcast provides cable services in exchange for a monthly fee based upon the level of service provided.  Comcast provides two cable products, Basic Cable and Premium Cable.  Customers who subscribe to Premium Cable pay higher monthly fees than those who subscribe only to Basic Cable.  Customers who subscribe to Premium Cable have access to high-definition channels, On Demand, numerous specialty channels, an interactive programming guide, and the ability to purchase pay-per-view programs and additional channels, like HBO.  Premium Cable customers must rent a cable television set-top box ("Set-Top Box") from Comcast in order to access Premium Cable.  The Set-Top Box enables Premium Cable subscribers to view Premium Cable content and use Premium Cable services.

In 2008, individuals began filing lawsuits against Comcast, alleging that Comcast unlawfully tied the sale of Premium Cable to the rental of a Set-Top Box from Comcast.  On June 17, 2009, the Judicial Panel on Multidistrict Litigation transferred and consolidated these

lawsuits before me as a multidistrict litigation, pursuant to 28 U.S.C. § 1407.  *See* MDL Panel

Transfer Order, ECF No. 1.  In total, twenty-four civil actions were consolidated into this MDL.[1]

On November 23, 2009, Plaintiffs filed a First Amended Consolidated Class Action

Complaint. *See* First Am. Consolidated Class Action Compl., ECF No. 26.  On September 30,

2010, Plaintiffs filed a Second Amended Consolidated Class Action Complaint. *See* Second Am.

Consolidated Class Action Compl., ECF No. 109.  On June 10, 2011, Plaintiffs filed a Third

Amended Consolidated Class Action Complaint.  *See* Third Am. Consolidated Class Action

Compl., ECF No. 122.  On October 24, 2017, Plaintiffs filed the currently operative Fourth

Amended  Consolidated Class Action Complaint, alleging that Comcast's unlawful tying

arrangement violates Section 1 of the Sherman Act, 15 U.S.C. § 1, the antitrust and consumer

protection laws of Washington, the Business & Professions Code of California, and the

Consumer Credit and Protection Act of West Virginia.  *See* Fourth Am. Consolidated Class

Action Compl., ECF No. 253 [hereinafter Compl.].

From the outset of the class action, Comcast sought arbitration of certain claims.  On

January 6, 2010, Comcast moved to compel arbitration. *See* Mot. Compel, ECF No. 35.  On July

22, 2011, after the filing of Plaintiffs' Third Amended Consolidated Class Action Complaint,

Comcast filed a new motion to compel arbitration.  *See* Mot. Compel, ECF No. 127.  During

2010 and 2011, the parties engaged in discovery only regarding arbitration.

---

[1] On October 16, 2014, I entered an order approving and adopting the parties' stipulation of dismissal without prejudice of nineteen of the twenty-four civil actions.  *See* Stipulation for Dismissal Order, ECF No. 201.  On October 12, 2017, I entered an order voluntarily dismissing without prejudice the claims in another one of the twenty-four civil actions.  *See* Voluntary Dismissal Order, ECF No. 252.  On November 13, 2017, I entered an order approving the parties' stipulation of dismissal without prejudice of two additional actions.  *See* Stipulation for Dismissal of Certain Pls. Order, ECF No. 258.  Only two of the twenty-four civil actions remain pending: *Deanne v. Comcast Corp., et al.*, No. 09-3659 and *West Virginia ex rel. McGraw v. Comcast Corp., et al.*, No. 09-4671.

From January 2012 through September 2012, the parties engaged in five formal mediation sessions before Thomas Rutter, Esquire, of ADR Options in Philadelphia.  Thereafter, the parties continued to engage in settlement negotiations.

During the pendency of this class action, the Supreme Court of the United States issued two important opinions on arbitration—*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) and *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013).  While the parties awaited the Supreme Court's decisions in these cases, significant delay occurred in the litigation and the settlement negotiations.  *See, e.g.* Stipulation and Order, ECF No. 114 (staying the case until the Supreme Court rendered its decision in *Concepcion*).

On November 12, 2014, Comcast filed a renewed motion to compel arbitration, reflecting the recent Supreme Court jurisprudence of *Concepcion* and *American Express*.[2]  *See* Mot. Compel, ECF No. 209.  This renewed motion to compel arbitration is pending.  Although Comcast previously sought only to compel individual arbitration of the Sherman Act claim, it now seeks to compel individual arbitration of the Sherman Act and Washington state law claims.

Now, nearly nine years after the inception of this MDL and several failed settlement attempts, the parties have reached a Fourth Amended Class Action Settlement Agreement.

## II. PROPOSED CLASS ACTION SETTLEMENT

### A. Proposed Settlement Class

The parties define the Settlement Class as follows:

All persons who:

> (i) resided in and subscribed to Premium Cable in California, Washington, or West Virginia during the Class Period, or

---

[2] Additionally, on October 27, 2015, Comcast filed a supplemental motion to compel arbitration that is also pending.  *See* Supp. Mot. Compel, ECF No. 231.

(ii) subscribed to Premium Cable in any state in the United States during the Class Period and elected to opt out of Comcast's arbitration clause as reflected in Comcast's records;

and paid Comcast a rental fee for a Set-Top Box at any time during the Class Period.

Excluded from the Settlement Class are: (i) those persons who opt out of this Agreement as identified in paragraph 6; (ii) all commercial account customers; (iii) Comcast officers, directors, or employees, any entity in which Comcast has a controlling interest, and the affiliates, legal representatives, attorneys, heirs, or assigns of Comcast; (iv) Class Counsel and Class Counsel's employees; and (v) Judge Anita B. Brody and members of her judicial staff of the United States District Court for the Eastern District of Pennsylvania, as well as any federal, state, or local governmental agency, and any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staffs.

Fourth Am. Class Action Settlement Agreement § 3.1, ECF No. 266 Ex. 1. [hereinafter Agreement].

## B. Proposed Settlement

The Class Period covers all Class Members who rented a Set-Top Box anytime starting on or after January 1, 2005 and ending on or before the date of this Court's Order granting preliminary approval of the Settlement Agreement. *Id.* § 2.8. The Settlement is a claims-made settlement.[3] *Id.* § 9.1. Comcast will pay all claims made in the aggregate that do not exceed $15.5 million in value. *Id.* § 9.1.6. If Class Members submit more than $15.5 million worth of claims, then benefits will be distributed on a pro rata basis. *Id.* If Class Members submit less than $15.5 million worth of claims, then Comcast will retain the balance. *Id.*

---

[3] "A 'claims-made' settlement is a settlement that does not have a fixed settlement fund, but rather provides that the defendant will pay claims of class members who file them, usually up to some fixed ceiling." 4 William B. Rubenstein, Newberg on Class Actions § 13:7 (5th ed.).

All Class Members will be entitled to a cash payment and Current Subscribers[4] will have the choice of either a cash payment or in-kind relief.  *Id.* § 9.1.  Class Members will be entitled to a cash payment in accordance with the length of time they rented a Set-Top Box from Comcast, regardless of the number of Set-Top Boxes they rented, as follows:

> 9.1.1.1   If the Claimant rented at least one Set-Top Box from 1 to 35 months (0 to 3 years), the Claimant is entitled to ten U.S. dollars and no cents ($10.00) payable by check.

> 9.1.1.2   If the Claimant rented at least one Set-Top Box from 36 to 59 months (3 to 5 years), the Claimant is entitled to twelve U.S. dollars and fifty cents ($12.50) payable by check.

> 9.1.1.3   If the Claimant rented at least one Set-Top Box for 60 or more months (more than 5 years), the Claimant is entitled to fifteen U.S. dollars and no cents ($15.00) payable by check.

*Id.* § 9.1.1.  Current Subscribers will be entitled to elect to receive in-kind relief in lieu of a cash payment.  Current Subscribers will be entitled to in-kind relief in accordance with the length of time they rented a Set-Top Box from Comcast, and will receive additional in-kind relief if they rented more than one Set-Top Box, as follows:

> 9.1.2.1   If the Claimant rented at least one Set-Top Box from 1 to 35 months (0 to 3 years), the Claimant is entitled to select one of the following options:
>
> (a) three (3) free months of Showtime (up to a maximum $30.00 value); or
>
> (b) five (5) movie or television show rentals or purchases (up to a maximum $29.95 value).
>
> Plus, if the Claimant rented more than one Set-Top Box, one (1) additional movie or television show rental or purchase (up to a maximum $5.99 value).

---

[4] Current Subscribers are "Class Members who are cable television subscribers of Comcast in the United States as of the date of the Notice provided . . . ."  Agreement § 2.11.

9.1.2.2    If the Claimant rented at least one Set-Top Box from 36 to 59 months (3 to 5 years), the Claimant is entitled to select one of the following options:

(a) three (3) free months of Showtime (up to a maximum $30.00 value) and one (1) movie or television show rental or purchase (up to a maximum $5.99 value) (a combined up to maximum $35.99 value); or

(b) six (6) movie or television show rentals or purchases (up to a maximum $35.94 value).

Plus, if the Claimant rented more than one Set-Top Box, two (2) additional movie or television show rentals or purchases (up to a maximum $11.98 value).

9.1.2.3    If the Claimant rented at least one Set-Top Box for 60 or more months (more than 5 years), the Claimant is entitled to select one of the following options:

(a) three (3) free months of Showtime (up to a maximum $30.00 value) and two (2) movie or television show rentals or purchases (up to a maximum $11.98 value) (a combined up to maximum $41.98 value); or

(b) seven (7) movie or television show rentals or purchases (up to a maximum $37.97 value).

Plus, if the Claimant rented more than one Set-Top Box, three (3) additional movie or television show rentals or purchases (up to a maximum $17.97 value).

*Id.* § 9.1.2.

7

## III. DISCUSSION

### A. Preliminary Approval of the Proposed Settlement[5]

Plaintiffs move for preliminary approval of the Settlement Agreement.  Under Federal

Rule of Civil Procedure 23(e), the settlement of a class action requires court approval.  Fed. R.

Civ. P. 23(e)(2).  Review of a proposed class action settlement typically proceeds in two stages.

At the first stage, the parties submit the proposed settlement to the court, which must make a

preliminary fairness evaluation.  If the proposed settlement is preliminarily acceptable, the court

then directs that notice be provided to all class members who would be bound by the proposed

settlement in order to afford them an opportunity to be heard on, object to, and opt out of the

settlement.  *See* Fed. R. Civ. P. 23(c)(3), (e)(1), (e)(5).  At the second stage, after class members

are notified of the settlement, the court holds a formal fairness hearing where class members may

object to the settlement.  *See* Fed. R. Civ. P. 2(e)(2).  If the court concludes that the settlement is

"fair, reasonable and adequate," the settlement is given final approval.  Fed. R. Civ. P. 23(e)(2).

In deciding whether to grant preliminary approval, a court determines whether "the

proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as

unduly preferential treatment of class representatives or segments of the class, or excessive

compensation of attorneys, and whether it appears to fall within the range of possible approval."

*Mehling v. New York Life Ins.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) (quoting *Thomas v. NCO*

*Fin. Sys.*, No. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002));  *Mack Trucks, Inc. v.*

*Int'l Union, UAW*, No. 07-3737, 2011 WL 1833108, at *2 (E.D. Pa. May 12, 2011) (stating same

standard); *Tenuto v. Transworld Sys., Inc.*, No. 99-4228, 2001 WL 1347235, at *1 (E.D. Pa. Oct.

31, 2001) (same).  Under Rule 23, a settlement falls within the "range of possible approval," if

---

[5] Because the Court will preliminarily certify the Settlement Class, the Court will address the fairness of
the Settlement Agreement.

there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness—will be satisfied.  *See Mehling*, 246 F.R.D. at 472.  In making a preliminary determination, my first and primary concern is whether there are any obvious deficiencies that would cast doubt on the proposed settlement's fairness.  I will also consider whether the negotiations occurred at arm's length, whether there was significant investigation of Plaintiffs' claims, and whether the proposed settlement provides preferential treatment to certain class members.  *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).

### 1. Whether the Settlement is Fair, Reasonable and Adequate

#### a. There Are No Obvious Deficiencies to Cast Doubt on the Proposed Settlement's Fairness

If the parties were to continue to litigate rather than settle this action, Plaintiffs would face several significant hurdles including, the risk of dismissal or ultimate loss,[6] the possibility that some putative Class Members would have to arbitrate their claims,[7] and the risk that the Court would decline to certify the case or only certify regional subclasses.[8]  In light of the risks attendant with this litigation, the Settlement Agreement provides sufficient compensation to putative Class Members.  Because the Settlement Agreement does not raise any red flags and adequately compensates putative Class Member, there are no obvious deficiencies to cast doubt on the proposed Settlement Agreement's fairness.

---

[6] There have been several lawsuits by cable television customers claiming that their cable television providers unlawfully tied the provision of cable services to the rental of set-top boxes.  In a few of these lawsuits, Circuit Courts have rejected the claims.  *See In re: Cox Enterprises, Inc*., 871 F.3d 1093 (10th Cir. 2017); *Kaufman v. Time Warner*, 836 F.3d 137 (2d Cir. 2016).

[7] Comcast still has pending motions to compel arbitration.  In part, these motions seek to compel individual arbitration of the Sherman Act and Washington state law claims.

[8] For instance, in *In re Cox Enterprises, Inc. Set-Top Box Antitrust Litig.*, No. 09-ML-2048-C, 2011 WL 6826813, at *16 (W.D. Okla. Dec. 28, 2011), a similar antitrust tying case against a different cable television provider, the district declined to certify a national class, holding that market power and antitrust injury could not be proven on a national level and would require multiple regional analyses.

### b. The Proposed Settlement Appears to Be the Product of Good Faith, Extensive Arm's Length Negotiations

Whether a settlement arises from arm's length negotiations is a key factor in deciding whether to grant preliminary approval.  *See Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's length negotiations in deciding to grant preliminary approval and highlighting the fact that the negotiations included "two full days of mediation before an experienced mediator"); *In re CIGNA Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898, at *2 (E.D. Pa. July 13, 2007) (noting that a presumption of fairness exists where parties negotiate at arm's length, assisted by a mediator);  *In re Auto. Refinishing Paint Antitrust Litig*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (preliminarily approving class action settlement that "was reached after extensive arms-length negotiation between very experienced and competent counsel"); 4 William B. Rubenstein, Newberg on Class Actions § 13:45 (5th ed.) ("[A] court will presume that a proposed class action settlement is fair when certain factors are present, particularly evidence that the settlement is the product of arms-length negotiation, untainted by collusion.").

Here, the parties participated in five formal mediation sessions before Thomas Rutter, Esquire, of ADR Options in Philadelphia.  Thereafter, the parties participated in numerous additional  robust settlement negotiations, and only reached this Fourth Amended Class Action Settlement Agreement after several failed attempts at settlement.  Therefore, it appears that the proposed Settlement Agreement is the product of good faith, arm's length negotiations.

### c. The Investigation of Plaintiffs' Claims Supports Preliminary Approval

Class Counsel has engaged in both formal discovery related to Comcast's motions to compel arbitration and informal discovery related to Set-Top Box technology and the antitrust

tying allegations involved in the case.[9]  The proposed Settlement was reached after repeated

briefing on the threshold issue of whether Plaintiffs were compelled to individually arbitrate their

claims—two full rounds of briefs prior to the Supreme Court's decisions in *Concepcion* and

*American Express* and an additional round of briefs after these decisions.

By the time the parties reached this Settlement Agreement, Class Counsel had a strong

grasp of the legal hurdles that Plaintiffs would face in order to succeed on their claims.  Class

Counsel understood that many of Plaintiffs' claims could have been dismissed at this early stage

of the litigation if Comcast had prevailed on the arbitration issue.  In addition, Class Counsel

recognized the risk that the Court would decline to certify the case or only certify regional

subclasses.  Moreover, Class Counsel understood that Plaintiffs would face significant obstacles

in proving their case-in-chief.

Because of the formal and informal discovery and the parties' multiple rounds of briefing

on the arbitration issue, Class Counsel knew the strengths and weaknesses of the case during

settlement negotiations with Comcast.  Therefore, the investigation of Plaintiffs' claims supports

preliminary approval of the proposed Settlement.

### d. There Appears to Be No Preferential Treatment of Certain Settlement Class Members

The proposed Settlement does not appear to provide undue preferential treatment to any

individual Class Member.  The Settlement Agreement provides that all putative Class Members

are entitled to the same amount of cash-payment in accordance with the length of time they

---

[9] Courts have preliminarily approved class action settlements where the litigation is in its early stages and limited or no formal discovery has occurred.  *See, e.g.*, *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436–37 (3d Cir. 2016), *as amended* (May 2, 2016) ("In some cases, informal discovery will be enough for class counsel to assess the value of the class' claims and negotiate a settlement that provides fair compensation."); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (In regards to class action settlements, "'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." (quoting *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 241 (5th Cir. 1981)).

rented a Set-Top Box from Comcast, regardless of the number of Set-Top Boxes they rented. These cash payments range from $10.00 to $15.00 depending on the length of time a Class Member rented a Set-Top Box.  If a Class Member is a Current Subscriber to Comcast, the Class Member may opt to receive in-kind relief in lieu of a cash payment from Comcast.  The in-kind relief for a Class Member who rented one Set-Top Box ranges in maximum value from $29.95 to $41.98 depending on the length of time a Class Member rented a Set-Top Box.  If, however, a Current Subscriber rented more than one Set-Top Box, the in-kind relief for a Class Member ranges in maximum value from $35.94 to $59.95 depending on the length of time a Class Member rented a Set-Top Box.

On the surface, it may appear that Current Subscribers receive preferential treatment in the Settlement Agreement because unlike Former Subscribers,[10] they are entitled to in-kind relief with a higher maximum value than the cash payment available to Former Subscribers and they receive additional in-kind relief for the rental of more than one Set-Top Box.  Take for example a Former Subscriber and a Current Subscriber who each rented two Set-Top Boxes for 60 or more months.  The Former Subscriber would be entitled to a $15.00 cash payment. Whereas, the Current Subscriber would be entitled to the same $15.00 cash payment or to in-kind relief with a total maximum value of $ 59.95 in the form of three free months of Showtime and two movie or television show rentals, plus three additional movie or television show rentals or purchases because the Current Subscriber rented more than one Set-Top Box.

It may appear inequitable that a Former Subscriber only gets $15.00 in cash and a Current Subscriber may get up to $59.95 in Comcast services.  In reality, however, Current Subscribers receive nothing more from Comcast than Former Subscribers because the actual cost to Comcast

---

[10] Former Subscribers are "Class Members who were cable television subscribers of Comcast in the United States but are no longer subscribers."  Agreement § 2.14.

to provide higher-value in-kind relief to Current Customers is much less than the actual cost to Comcast to provide lower-value cash payments to putative Class Members.  Thus, the $59.95 maximum value of in-kind relief that a Current Subscriber may receive only costs Comcast $15.00 or less.  At best, the in-kind relief is equivalent to the cash payments available to all putative Class Members.  Because all putative Class Members have the option to receive an equal cash payment based on the length of time they rented a Set-Top Box, I preliminarily find that the Settlement Agreement does not provide preferential treatment to any segment of the Settlement Class.

In sum, the Settlement Agreement falls within the range of possible approval.  Therefore, I will grant preliminary approval of the Settlement Agreement.

### B.  Preliminary Certification of the Settlement Class

Plaintiffs move for certification of the Settlement Class.  Although Plaintiffs move for final certification of the Settlement Class, at the preliminary approval stage of a class action settlement, a court may instead opt to preliminarily certify a settlement class pursuant to Federal Rule of Civil Procedure 23(e) and reserve the certification decision for a later date.  *In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 583-84 (3d Cir. 2014) [hereinafter *NFL I*].  "[F]or uncertified settlement classes [this] makes sense, particularly from a notice perspective."  *Id.* at 584.  "Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement."  *Id.* at 586. Accordingly, the Court opts to conduct a preliminary certification analysis at this time and reserves the certification decision until after Notice of the proposed Settlement Agreement has been sent to putative Class Members.

"This preliminary determination employs a 'less rigorous analysis than that necessary for final certification' because courts conduct a 'fairness hearing in order to issue a final class certification and approve the settlement.'" *In re: Shop-Vac Mktg. & Sales Practices Litig.*, MDL No. 2380, 2016 WL 3015219, at *3 (M.D. Pa. May 26, 2016) (quoting *In re: Amtrak Train Derailment*, MDL No. 2654, 2016 WL 1359725, at *2, *4 (E.D. Pa. Apr. 6, 2016)); *see also NFL I*, 775 F.3d at 586 (noting that when the district court made a preliminary determination on class certification, "it reserved the 'rigorous analysis'" on certification until after the fairness hearing). In making this preliminary certification determination a court examines whether "the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." Manual for Complex Litigation § 21.632 (4th ed. 2004); *In re: Shop-Vac*, 2016 WL 3015219, at *3 (same).

Plaintiffs seek certification of a Rule 23(b)(3) settlement class. Federal Rule of Civil Procedure 23(a) contains four threshold requirements for certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) imposes two additional requirements: "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[11] Fed. R. Civ. P. 23(b)(3). The Rule 23(b)(3) requirements are

---

[11] Ascertainability is typically a "necessary prerequisite" of a Rule 23(b)(3) class. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 (3d Cir. 2015), *as amended* (Apr. 28, 2015). In this case, however, the Third Circuit has concluded that ascertainability is not a proper basis to deny certification. *See* ORDER of USCA, ECF No. 241.

commonly referred to as predominance and superiority. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc).

"[T]he party proposing class-action certification bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015). However, the existence of a settlement means that "certain Rule 23 considerations . . . are not applicable." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013). For example, because a settlement obviates the need for trial, concerns regarding the manageability of a Rule 23(b)(3) class disappear. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997); *see also Sullivan*, 667 F.3d at 297 (noting that "concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004) ("[C]oncerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class" (citing *Amchem*, 521 U.S. at 620)).

### 1. Rule 23(a) Requirements

#### a. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). The parties represent that there are over 3.5

million proposed Class Members.  Accordingly, Plaintiffs satisfy the numerosity requirement of Rule 23(a).

### b. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To satisfy commonality, class members' claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Commonality may be shown by "demonstrat[ing] that the class members 'have suffered the same injury.'"  *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  A single common question or fact is sufficient to satisfy the commonality requirement of Rule 23(a)(2).  *Wal-Mart*, 564 U.S. at 359; *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

Here, Plaintiffs allege the same harm from the same illegal conduct: the payment of supracompetitive prices as a result of Comcast's unlawful tying of its Premium Cable to the rental of a Set-Top Box.  Whether Comcast engaged in such conduct and Plaintiffs suffered harm as a result are common questions of law and fact.  Thus, commonality exists.

### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality inquiry asks "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class."  *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal*, 43 F.3d at 55).

The Third Circuit has "set a low threshold for satisfying" the typicality requirement. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001), *as amended* (Oct. 16, 2001).  The typicality requirement "acts as a bar to class certification only when 'the legal theories of the named representatives potentially conflict with those of the absentees.'" *Id.*  (quoting *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 631 (3d Cir. 1996), *aff'd sub nom.*, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)).  "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences."  *Newton*, 259 F.3d at 183-84.

Named Plaintiffs allege that they and all putative Class Members suffered economic damages from Comcast's illegal tying arrangement.  Specifically, Plaintiffs allege that Comcast unlawfully tied the sale of its Premium Cable to the rental of a Comcast Set-Top Box, and that this tying arrangement enabled Comcast to reap supracompetitve profits from Plaintiffs and all putative Class Members who were forced to pay rental fees to Comcast to enjoy Premium Cable services.  Plaintiffs satisfy the typicality requirement because the claims of the named Plaintiffs and the putative Class Members involve the same conduct by Comcast.

### d. Adequacy of Representation

The final prong of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem*, 521 U.S. at 625.  The adequacy of representation requirement addresses two components: (1) the qualifications of class counsel; and (2) the interests and incentives of the class representatives.  *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012).

### i. Adequacy of Class Counsel

When examining settlement classes, courts "have emphasized the special need to assure that class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." [12] *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995).

Plaintiffs seek the appointment of Dianne M. Nast, Kenneth A. Wexler and, Stephen A. Corr as Co-Lead Class Counsel.  Ms. Nast, Mr. Wexler, and Mr. Corr have been involved in this litigation since its inception and were among the first counsel to file individual complaints before the creation of this MDL.  Each has played an integral role in organizing and pursuing this MDL on behalf of Plaintiffs and the putative Settlement Class.  Ms. Nast, Mr. Wexler, and Mr. Corr. have extensive knowledge of antitrust law, complex litigation and class action practice, and have substantial experience handling class actions and multidistrict litigations.  *See* Pls.' Mem., ECF No. 266 Exs. 3, 4, and 5.

Throughout the course of this litigation, Ms. Nast, Mr. Wexler, and Mr. Corr have identified and investigated potential claims in the action.  In addition, in recognition of two important Supreme Court opinions on arbitration, *Concepcion* and *American Express*, they have on several occasions re-examined the strength of their legal claims.

---

[12] In 2003, Congress amended Rule 23 to include subdivision 23(g), which provides a non-exhaustive list of factors for a court to consider when scrutinizing the adequacy of class counsel's representation.  *See* Fed R. Civ. P. 23(g).  The addition was meant to transfer the analysis of class counsel's representation from Rule 23(a)(4), where it had little textual support, to Rule 23(g).  *See* 1 William B. Rubenstein, Newberg on Class Actions § 3.80 (5th ed.).  Rule 23(g) "builds on" the existing 23(a)(4) jurisprudence instead of "introducing an entirely new element into the class certification process."  *See* Fed. R. Civ. P. 23(g) advisory committee's notes (2003 amendments).  Accordingly, the Third Circuit continues to apply the factors relied on prior to the addition of Rule 23(g).  *See In re Cmty. Bank of N. Va.*, 622 F.3d 275, 304-05 (3d Cir. 2010); *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 307 (3d Cir. 2005).  Class Counsel's representation of the Class satisfies both Rule 23(a)(4) and 23(g).

Moreover, Ms. Nast, Mr. Wexler, and Mr. Corr have vigorously prosecuted the action at arm's length from Comcast.  They have engaged in adversarial motions practice, specifically related to the arbitrability of claims of putative Class Members and participated in five formal mediation sessions before Thomas Rutter, Esquire, of ADR Options in Philadelphia, as well as other negotiation sessions with Comcast.

Accordingly, Ms. Nast, Mr. Wexler, and Mr. Corr have adequately represented the putative class.

### ii. Adequacy of Class Representatives

"A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 625-26 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).  "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey*, 681 F.3d at 183.  The purpose of the adequacy requirement is to identify intra-class conflicts that may prevent the representative plaintiffs from adequately representing the entire class. *Id.* at 183-4.  "An intra-class conflict will not necessarily prevent certification if the settlement agreement contains sufficient structural protections to ensure that the interests of the class will be adequately represented despite the conflict." *Id.* at 185.

Only a fundamental intra-class conflict will violate Rule 23(a)(4).  *Id.* at 184.  "A fundamental conflict exists where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class." *Id.* at 184. (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).  Additionally, "[a] conflict concerning the allocation of remedies amongst class members with competing interests can be fundamental." *Id.*  Thus, a court must address two questions to determine whether the

representative plaintiffs adequately represent the putative class: "(1) whether an intra-class conflict exists; and if so, (2) whether that conflict is 'fundamental.'" *Id.*

Plaintiffs James E. Deanne, William Gonzales, John Martich, and Carrie D. Cooper are adequate representatives of the proposed Settlement Class. The named Plaintiffs include both Current Subscribers and Former Subscribers from Washington, California, and West Virginia. No fundamental intra-class conflict exists because Mr. Deanne, Mr. Gonzales, Mr. Martich, and Ms. Cooper share the same strong interest in establishing Comcast's liability and seek the same type of damages for the same alleged anticompetitive conduct.

### 2. Rule 23(b)(3) Requirements

#### a. Predominance

Under Rule 23(b)(3), an opt-out class may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623, to determine whether the proposed class "'would achieve economies of time, effort, and expense,'" *id.* at 615 (quoting Fed R. Civ. P. 23(b)(3) advisory committee's notes (1966 amendments)). The predominance inquiry is a more stringent version of the commonality analysis; common questions must drive the litigation. *See Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) ("[T]he commonality requirement 'is subsumed by the predominance requirement.'" (quoting *Georgine*, 83 F.3d at 626)); *Warfarin*, 391 F.3d at 528 (noting the predominance requirement to be "far more demanding" than the commonality requirement).

"[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298.  Although it is sometimes necessary to determine whether the elements of each claim can be proved through evidence common to the class, *Sullivan*, 667 F.3d at 306,  a settlement "obviates the difficulties inherent in proving the elements of varied claims at trial or in instructing a jury on varied state laws," *Sullivan* 667 F.3d at 304.  "[W]hen dealing with variations in state laws, the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class." *Warfarin*, 391 F.3d at 529 (citing *Amchem*, 521 U.S. at 620).  Additionally, because certification of a settlement class is sought, a court is "not as concerned with formulating some prediction as to how [an] element of a Sherman Act violation would play out at trial, for the proposal is that there be no trial." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 269 (3d Cir. 2009) (citations and internal quotation marks omitted).

Here, the allegation is that Comcast engaged in a common course of conduct—it unlawfully tied the sale of its Premium Cable to the rental of a Comcast Set-Top Box—and putative Class Members suffered the same injury—the payment of supracompetitve prices for their Set-Top Boxes.  Accordingly, Plaintiffs satisfy the predominance requirement.

### b. Superiority

Rule 23(b)(3) requires "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). "The superiority requirement 'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those alternative available methods of adjudication.'" *Warfarin*, 391 F.3d at 533-

34 (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316

(3d Cir. 1998)).  In determining whether a settlement class action is superior, a court

"consider[s] the class members' interests in individually controlling litigation, the extent and

nature of any litigation, the desirability or undesirability of concentrating the litigation, and the

likely difficulties in managing a class action."  *In re Nat'l Football League Players Concussion*

*Injury Litig.*, 821 F.3d 410, 434–35 (3d Cir. 2016), as amended (May 2, 2016) [hereinafter *NFL*

*II*] (citing Fed. R. Civ. P. 23(b)(3)(A)-(D)).

The parties indicate that there are at least 3.5 million putative Class Members with low-

dollar-value claims.  Although there are numerous putative Class Members, there are a very

small number of individual lawsuits pending against Comcast.  "[I]ndividual consumer class

members have little interest in 'individually controlling the prosecution or defense of separate

actions' because each consumer has a very small claim in relation to the cost of prosecuting a

lawsuit."  *Warfarin*, 391 F.3d at 534 (quoting Fed. R. Civ. P. 23(b)(3)(A)).  These costs are

especially burdensome in an antitrust lawsuit.  *See* ECF Nos. 128, 133.  The small number of

lawsuits also indicates a lack of interest in individually bringing claims.  *See Warfarin*, 391 F.3d

at 534.  "[F]rom the consumers' standpoint, a class action facilitates spreading of the litigation

costs among the numerous injured parties and encourages private enforcement of the statutes."

*Id.*  Moreover, settlement on a classwide basis is superior to individual adjudication because it

provides putative Class Members with prompter compensation.  Accordingly, Plaintiffs satisfy

the superiority requirement.

In conclusion, I will preliminarily certify the Settlement Class because the Settlement

Class appears to satisfy the requirements of Rule 23.

### C. The Proposed Form and Manner of Notice

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, a district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). For classes certified under Rule 23(b)(3), a court must also ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see Amchem*, 521 U.S. at 617. Rule 23(c)(2)(B) provides:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "In addition to the requirements of Rule 23, due process further requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *NFL II*, 821 F.3d at 435 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Plaintiffs suggest several different means to provide Notice of the proposed Settlement to putative Class Members. Comcast will provide a summary Notice to Current Subscribers in their monthly Comcast bill. *See* Agreement Ex. C. Notice by publication will also be provided in the following nationwide publications: Parade, People, Better Homes & Gardens, National Geographic, Sports Illustrated, and Reader's Digest. *See* Agreement Ex. D. Additionally, an Internet settlement website will be established to display the following: (1) a long-form Notice of the Settlement Agreement; (2) contact information for Co-Lead Class Counsel, in the form of

23

firm name, attorney name, a phone number, address, e-mail address, and website address; (3) a complete copy of the Settlement Agreement; (4) frequently asked questions; and (5) a Claim Form that can be submitted electronically.  All Notice sent to Current Subscribers in their monthly Comcast bill and disseminated via national publications will direct putative Class Members to the settlement website.  The proposed manner of disseminating Notice appears to satisfy the requirements of Rule 23 and due process.  *See Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause."). The form and content of the proposed Notice and the proposed Claim Form contain several flaws and do not appear to satisfy either Rule 23 or due process.  Some of the most significant deficiencies in the Notice and Claim Form are set forth below.

### 1. Proposed Summary Notice to Current Subscribers in their Monthly Bill

The proposed Notice to Current Subscribers in their monthly bill contains significant deficiencies, including:

### a.  An Inaccurate Definition of the Settlement Class

The proposed Notice defines the Settlement Class as "all persons who, *or entities which*: (a) *reside within* the states of California, Washington, or West Virginia or have opted out of Comcast's arbitration clause as recorded within the arbitration clause opt-out list kept at Comcast's offices; and (b) have paid Comcast a rental fee for a Set-Top Box."  Agreement Ex. C (emphasis added).  The italicized portions of the definition of the Settlement Class in the Notice do not comport with the following definition of the Settlement Class provided in the Settlement Agreement:

All persons who:

> (i) resided in and subscribed to Premium Cable in California, Washington, or West Virginia during the Class Period, or

> (ii) subscribed to Premium Cable in any state in the United States during the Class Period and elected to opt out of Comcast's arbitration clause as reflected in Comcast's records;

and paid Comcast a rental fee for a Set-Top Box at any time during the Class Period.

Agreement § 3.1. Despite what is stated in the proposed Notice, putative Class Members are persons and not entities and putative Class Members don't currently have to reside in California, Washington or West Virginia—they had to reside there at any time during the Class Period and had to subscribe to Premium Cable during the time they lived there.

### b. An Incorrect Statement Regarding Incentive Awards

The proposed Notice states that the Court will consider whether to approve incentive awards to three named Plaintiffs even though there are four named Plaintiffs.

### c. A Failure to Inform Putative Class Members of the Settlement Cap

The proposed Notice does not inform putative Class Members that Comcast will only pay all claims made in the aggregate that do not exceed $15.5 million in value.

### 2. The Proposed Summary Notice in Nationwide Publications

The proposed Notice to be disseminated in nationwide publications contains significant deficiencies, including:

### a. An Inaccurate Definition of the Settlement Class

The proposed Notice defines the Settlement Class as "all persons who, *or entities which*: (a) *reside within* the states of California, Washington, or West Virginia or have opted out of Comcast's arbitration clause as recorded within the arbitration clause opt-out list kept at

Comcast's offices; and (b) have paid Comcast a rental fee for a Set-Top Box *from the start of the Class Period to the Effective Date*." Agreement Ex. D (emphasis added). The italicized portions of the definition of the Settlement Class in the Notice do not comport with the following definition of the Settlement Class provided in the Settlement Agreement:

> All persons who:
>
> > (i) resided in and subscribed to Premium Cable in California, Washington, or West Virginia during the Class Period, or
> >
> > (ii) subscribed to Premium Cable in any state in the United States during the Class Period and elected to opt out of Comcast's arbitration clause as reflected in Comcast's records;
>
> and paid Comcast a rental fee for a Set-Top Box at any time during the Class Period.

Agreement § 3.1. Despite what is stated in the proposed Notice, putative Class Members are persons and not entities and putative Class Members don't currently have to reside in California, Washington or West Virginia—they had to reside there at any time during the Class Period and had to subscribe to Premium Cable during the time they lived there. Moreover, putative Class Members did not have to rent a Set-Top Box during from the start of the Class Period to the Effective Date—they had to rent a Set-Top Box at any time during the Class Period.

### b. A Failure to Inform Putative Class Members of the Settlement Cap

The proposed Notice does not inform putative Class Members that Comcast will only pay all claims made in the aggregate that do not exceed $15.5 million in value.

### 3.  The Proposed Long-Form Notice on the Settlement Website

The proposed Notice to be published on the settlement website contains significant deficiencies, including:

### a. An Inaccurate Description of the Settlement Class

The introduction to the proposed Notice states: "The Settlement offers a cash benefit *and/or* credits to *current* Comcast Customers who *reside in* the States of California, Washington, or West Virginia or who opted-out of Comcast's arbitration clause as recorded within the arbitration clause opt-out list kept at Comcast's offices, depending on the period of time each customer rented a Set-Top Box from Comcast and *how many Set-Top Boxes each customer rented*." Agreement Ex. E, at 1 (emphasis added). The italicized portions of the definition of the Settlement Class in the Notice do not comport with the following definition of the Settlement Class provided in the Settlement Agreement:

> All persons who:
>
> (i) resided in and subscribed to Premium Cable in California, Washington, or West Virginia during the Class Period, or
>
> (ii) subscribed to Premium Cable in any state in the United States during the Class Period and elected to opt out of Comcast's arbitration clause as reflected in Comcast's records;
>
> and paid Comcast a rental fee for a Set-Top Box at any time during the Class Period.

Agreement § 3.1. Despite what is stated in the proposed Notice, Current Subscribers either receive a cash benefit or in-kind relief. Putative Class Members don't currently have to reside in California, Washington or West Virginia—they had to reside there at any time during the Class Period and had to subscribe to Premium Cable during the time they lived there. Moreover, putative Class Members include Former Subscribers who receive the same amount of compensation regardless of the number of Set-Top Boxes they rented.

### b. An Inaccurate Statement of the Available Compensation

The introduction to the proposed Notice contains a box titled "Your Legal Rights And Options In This Settlement," which includes the statement that a Class Member may "Submit a Claim Form seeking cash payment *and/or* other benefits."  Agreement Ex. E, at 1 (emphasis added).  The italicized portion is inaccurate because Current Subscribers either receive a cash payment or in-kind relief and Former Subscribers only receive a cash payment.

### c. A Failure to Inform Current Subscribers Who Select In-Kind Relief of the Risk of Receiving No Compensation if they Leave Comcast Prior to Distribution of Benefits

In Section 9, the proposed Notice fails to inform Current Subscribers that it may take a considerable amount of time before distribution of benefits, and if they select in-kind relief and are no longer a Comcast subscriber at the time of distribution, then they will receive no compensation.

### d. An Inappropriate Statement Regarding Arbitration

In Section 14, the proposed Notice states: "Unless you have opted out of Comcast's arbitration clause and class action ban, you *must arbitrate* your claim if you exclude yourself from the Settlement and Settlement Class."  Agreement Ex. E § 14 (emphasis added).  Because the Court has not ruled on any of Comcast's motions to compel arbitration, the italicized portion should be changed from "must arbitrate" to "may have to arbitrate."

### e. An Improper Statement Regarding Certification

In Section 20, the proposed Notice states: "[T]he Court will hold a public hearing . . . to determine whether the Settlement Class *was properly certified* . . . ."  Agreement Ex. E § 20 (emphasis added).  Because the Court reserves decision on certification of the Settlement Class

until after the fairness hearing, the italicized potion should be changed from "was properly certified" to "should be certified."

### 4. The Proposed Claim Form

The proposed Claim Form contains significant deficiencies, including:

#### a. A Failure to Define the Settlement Class and the Class Period

The proposed Claim Form does not provide a definition of the Settlement Class and the Class Period.[13]

#### b. An Imprecise Request for Subscriber Information

Part 2 of the proposed Claim Form, labeled "Subscriber Information," requires a Class Member to list his/her "Service Address (where you receive(d) Comcast service, if different from Mailing Address)."  Agreement Ex. A § 2.  Part 2 assumes that a Class Member only received

---

[13] As discussed, the proposed forms of Notice and the Claim Form fail to properly describe the Settlement Class and the benefit amount each Class Member may be entitled to.  The Settlement Agreement defines the Settlement Class as:

> All persons who:
>
> > (i) resided in and subscribed to Premium Cable in California, Washington, or West Virginia during the Class Period, or
> >
> > (ii) subscribed to Premium Cable in any state in the United States during the Class Period and elected to opt out of Comcast's arbitration clause as reflected in Comcast's records;
>
> and paid Comcast a rental fee for a Set-Top Box at any time during the Class Period.

Agreement § 3.1.  The Settlement Agreement also provides that the amount of benefit that a Class Member may receive is determined by the length of time that the Class Member rented a Set-Top Box.  Therefore, the Notice and Claim Form should explain that a Class Member who paid Comcast a rental fee for a Set-Top Box will receive credit: (1) for each month that s/he lived in any of the following states, California, Washington, or West Virginia, during the Class Period and subscribed to Premium Cable; and/or (2) for each month that s/he resided in any state in the United States during the Class Period and subscribed to Premium Cable, but elected to opt out of Comcast's arbitration clause.  For instance, a person who subscribed to Premium Cable in California for 24 months during the Class Period and later subscribed to Premium Cable in Washington for an additional 12 months during the Class Period would be entitled to receive a benefit amount in accordance with a Class Member who rented a Set-Top Box for 36 months.

Comcast service at one address during the thirteen-year Class Period.  In thirteen years, however, many Class Members may have received Comcast service at multiple locations.

### c. An Improper Organization of Information

Part 2 of the proposed Claim Form, labeled "Subscriber Information," contains information about the validity of Settlement Credits.  This information should be moved to Part 3 labeled "Benefits."

### d. A Failure to Inform Current Subscribers Who Select In-Kind Relief of the Risk of Receiving No Compensation if they Leave Comcast Prior to Distribution of Benefits

Part 3 of the proposed Claim Form, labeled "Benefits," fails to inform Current Subscribers that it may take a considerable amount of time before distribution of benefits, and if they select in-kind relief and are no longer a Comcast subscriber at the time of distribution, then they will receive no compensation.

### e. A Failure to Clearly Present the Compensation Available to Each Class Member

Part 3 of the proposed Claim Form, labeled "Benefits," requires a Class Member to select the type of compensation that s/he would like to receive, but provides instructions that are extremely difficult to understand and follow.  Because of this confusion, there is a strong likelihood that some putative Class Members will select invalid benefit options.

### f. A Failure to Properly Define the Length of Time a Class Member had to Rent a Set-Top Box in Order to Receive Maximum Compensation

Part 3 of the proposed Claim Form, labeled "Benefits," provides that a Class Member is eligible for maximum compensation if s/he "rented a Set-Top Box from 60 to 96 months (5 to 8 years)."  The Settlement Agreement, however, provides maximum compensation to any putative

Class Member who rented a Set-Top Box "for 60 or more months (more than 5 years)."
Agreement § 9.1.

### g. A Failure to Narrowly Tailor the Certification Requirements

Part 4 of the proposed Claim Form, labeled "Certification," requires each Class Member
to declare under penalty of perjury that s/he is a Class Member who rented a Set-Top Box during
the Class Period.  Additionally, all Class Members are required to "enclos[e] a true and correct
copy/copies of one of the following as proof of payments of the rental fee(s) referenced in Part 3:
[] Cancelled check(s) reflecting payment; or [] Credit card or bank statement(s) reflecting
payment; or [] Invoice from Comcast reflecting rental fee(s) for set-top Boxes."  Agreement Ex.
A § 4.  This enclosure requirement should not apply to Current Subscribers because Comcast
should already have proof in its possession that these customers rented Set-Top Boxes.  As to
Former Subscribers, the enclosure requirement should be more narrowly tailored to state that
Class Members are required to enclose a true and correct copy of one of the following as proof of
payments of the rental fee(s) referenced in Part 3: [] A Cancelled check reflecting payment to
Comcast; or [] A Credit card or bank statement reflecting payment to Comcast; or [] An Invoice
from Comcast reflecting a rental fee charge for one or more Set-Top Box.

Because the proposed Notice does not meet the requirements of Rule 23 and due process,
I cannot approve the proposed Notice.

## IV. CONCLUSION

For the reasons set forth above, I will grant the motion in part and preliminarily approve
the Settlement Agreement and preliminarily certify the Settlement Class.  Because of
deficiencies in the proposed Notice and proposed Claim Form, I will deny the portion of the
motion that seeks approval of the proposed Notice and proposed Claim Form, the appointment of

a Claims Administrator, and the establishment of a schedule for completion of the Settlement approval process.  In order to cure these deficiencies, Plaintiffs will be ordered to submit an amended motion that only seeks approval of revised proposed forms of Notice, a revised proposed Claim Form, appointment of a Claims Administrator, and a revised proposed schedule for completion of the Settlement approval process.


s/Anita B. Brody


_____

ANITA B. BRODY, J.


Copies **VIA ECF** on  9/5/2018